36307, 36308. SOUTHEAST CONSULTANTS, INC. et al. v. McCRARY ENGINEERING CORPORATION; and vice versa.

HILL, Justice.

This is the first occasion this court has had to consider the duty of a corporate officer or employee not to appropriate a "business opportunity" of his corporation. The prohibition on appropriation of a business opportunity was first introduced into Georgia law as part of the comprehensive revision of our corporation law in 1968. That revision was patterned in part on the Model Business Corporation Act. However the provision in issue here, Ga. L. 1968, pp. 565, 640; Code § 22-714, is based on the New York Business Corporation Law and has been characterized by one commentator as a "striking difference" from prior law. Baker, "Liability of Corporate Directors and Officers (and Shareholders) Under the Georgia Business Corporation Code," 7 Ga. S.B.J. 277, 284 (1970/71).

McCrary Engineering Corp. is an Indiana corporation substantially owned by Leland Boren, a resident of that state. McCrary Engineering specializes in the planning, design and supervision of construction of water and sewerage projects for municipalities, counties and industry. McCrary has an office in Atlanta from which it operates throughout the state.

Defendant Hood, whose office is in Atlanta, was employed by McCrary in 1971 and became its president in 1972. In April 1976, Hood caused defendant Southeast Consultants, Inc., to be chartered, with Hood as principal stockholder and president. Unknown to

McCrary's directors, Southeast used McCrary's Atlanta office as its office and used McCrary's equipment, supplies and personnel in its engineering operations. McCrary contends Southeast solicited its clients.

McCrary entered into a contract for a preliminary study with the City of Danielsville which was completed prior to July 31, 1979.

On July 31, 1979, after Hood's efforts to purchase McCrary proved unsuccessful, Gooch (McCrary's chief engineer), Holcomb and Henson (two of McCrary's resident inspectors), Duckett (a McCrary engineer), and others left McCrary with Hood and joined Southeast as officers, engineers and employees. McCrary had no written contracts with these employees (including Hood) and hence no covenants not to compete.

On August 14, 1979, McCrary sued Hood and Southeast Consultants, Inc., for damages and injunctive relief, alleging that defendant Hood had breached his fiduciary duties to McCrary as follows: (1) by forming a competing engineering firm without notice and by improperly using McCrary's resources to set up and operate the new firm; (2) by representing that Southeast was affiliated with McCrary and by actively soliciting McCrary's clients; (3) by disparaging McCrary to its personnel and by encouraging them to leave McCrary to work for Southeast; and (4) by usurping current and future business opportunities belonging to McCrary, particularly for contracts to design sewer and water systems and contracts to supervise completion of projects for which McCrary had prepared the initial designs.

McCrary later amended its complaint to add four other former employees as defendants, including Gooch, Holcomb, Henson and Duckett, then Southeast's vice-president, branch manager, field man, and general engineer, respectively.

The trial court issued a temporary restraining order on August 17, 1979, which prohibited defendants or their agents from soliciting McCrary's present or prospective clients. On August 24, the defendants moved to dissolve the temporary injunction on ground the original order was overbroad so as to restrict defendants from participating in almost any project that they might seek, including a contract with the City of Bowden then held by McCrary. After hearing the defendants' motion, the trial court amended its earlier order to restrain defendants from soliciting contracts on 22 specified projects as to which McCrary either had a contract or was actively seeking to enter into a contract at the time of the mass walkout. The cities of Bowden and Danielsville were included on this list.

The City of Bowden sought to intervene in the action on

September 12, 1979. Bowden alleged that McCrary had breached its contract, and that in any event the contract allowed Bowden to hire resident inspectors of its own. Bowden sought dissolution of the restraining order so it could enter into a contract with Southeast. The trial court agreed to allow Bowden to contract directly with Gooch, Holcomb and Henson as resident inspectors. McCrary's motion to modify this order was denied.

On December 11, 1979, the trial court found as a matter of law that the Danielsville planning contract was a "business opportunity" properly belonging to McCrary because of the work it had done on the project before the July 31 walkout and enjoined further action by the defendants concerning that project subject to McCrary's posting a $75,000 bond. McCrary posted the bond, defendants withdrew their name from consideration of the contract, and Danielsville rejected McCrary's bid and awarded the contract to a third party.

The defendants appeal the trial court's finding that the Danielsville contract was a "business opportunity" belonging to McCrary and the granting of an injunction against their participation in the project. McCrary cross appeals on grounds that the trial court erred in allowing certain former employees of McCrary now with Southeast to be hired as resident inspectors on the Bowden project. Hence the defendants' appeal involves the Danielsville project and plaintiff's cross appeal involves the Bowden project. The remaining provisions of the trial court's orders have not been appealed. For convenience, we deal with the cross appeal first.

1. After termination of employment, an employee normally is free to engage in competition with his former employer, and to solicit the employer's customers, in the absence of an agreement to the contrary. In *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.,* 224 Ga. 160, 165 (160 SE2d 356) (1968), this court said: " 'A person who leaves the employment of another has a right to take with him all the skill he has acquired, all the knowledge he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer. Trade secrets are the property of the employer and cannot be taken or used by the employee for his own benefit, but customers are not trade secrets. Knowledge on the part of the employee concerning the names and addresses of customers is not the property of the employer.' 28 AmJur 306, § 113; 43 CJS 755, § 148 (b)." Prior to 1968, the *Taylor Freezer* rule allowing freedom of competition was applicable to officers as well as employees. See *Uni-worth Enterprises v. Wilson,* 244 Ga. 636 (261 SE2d 572) (1979), where a covenant not to compete was held invalid as to an executive vice president and director; *Redmond v. Royal Ford, Inc.,* 244 Ga. 711 (261 SE2d 585) (1979), also involved a

vice president.[1]

In 1968, Code Ann. § 22-714 was amended (Ga. L. 1968, pp. 565, 640) so as to provide in pertinent part as follows: "(a) An action may be brought [by the corporation] . . . against one or more directors or officers of a corporation to procure for the benefit of the corporation a judgment for . . . (1) . . . any other relief called for by his official conduct, in the following cases: . . . (C) The appropriation, in violation of his duties, of any business opportunity of the corporation. . ." Paragraph (d) of § 22-714 provides that "This section shall not limit any liability otherwise imposed by law upon any director or officer or any third party." As the trial judge recognized, the applicability of Code § 22-714 is the controlling issue in this case.

Assuming that a former employee is a third party within the meaning of § 22-714, it nevertheless is clear under *Taylor Freezer,* supra, that a former employee has no liability for mere customer solicitation and competition with the former employer in the absence of a valid covenant not to compete. We therefore hold that insofar as corporate opportunities are concerned, Code § 22-714 is applicable according to its terms to directors and officers but not to typical employees.

McCrary has failed to show that its chief engineer and other employees were corporate officers or otherwise held fiduciary positions and McCrary did not have covenants not to compete with its employees. There has been no showing that Hood or Southeast will obtain any of the proceeds of the three resident inspector jobs. Therefore, McCrary's contention that its former employees hired by the City of Bowden breached a fiduciary duty to McCrary by appropriating a corporate opportunity is not sustainable. On this record, McCrary's complaint that Bowden breached its contract with McCrary is a matter between McCrary and Bowden in the first instance. The trial court did not abuse its discretion in allowing the three former McCrary employees to be employed by the City of Bowden.

2. Turning now to the Danielsville project we direct our

---

[1]No Georgia case has been cited or found finding a common law fiduciary duty requiring corporate officials to refrain from using corporate information for personal advantage at the corporation's expense. See, Pepper v. Litton, 308 U. S. 295, 311 (60 SC 238, 84 LE 281) (1939); Guth v. Loft, Inc., 23 Del. Ch. 255, 5 A2d 503, 510 (1939); 3 Fletcher, Cyclopedia Corporations, § 838 (1975). That is to say, no Georgia case has been found declaring a business opportunity to be "property of the employer" within the meaning of *Taylor Freezer,* supra. Compare *Collier v. Mayflower Apartments, Inc.,* 196 Ga. 419 (3) (26 SE2d 731) (1943); *Oliver v. Oliver,* 118 Ga. 362 (45 SE 232) (1903); *Baker v. Sutton,* 47 Ga. App. 176 (170 SE 95) (1933).

attention to defendant Hood, the former president of McCrary, and defendant Southeast, the corporation Hood organized and now manages as its president.

Code § 22-714, quoted above, is applicable to existing officers and directors, and also to former officers and directors as to the former employer's business opportunities existing at the time of voluntary resignation. See Abbott Redmont Thinlite Corp. v. Redmont, 475 F2d 85, 88 (2nd Cir. 1973); Raines v. Toney, 228 Ark. 1170 (313 SW2d 802, 809) (1958). A corporate officer does not become free to appropriate a business opportunity of the corporation by resigning his office, just as an officer cannot immunize himself from suit for improperly acquiring corporate assets by resigning. Code § 22-714 (a) (1) (B). Thus, although a former corporate officer may compete with his former employer, he is prohibited by Code § 22-714 from appropriating, in violation of his duties as a fiduciary, his former employer's business opportunities existing at the time of resignation.

The next issue to be decided is whether the Danielsville project constituted a business opportunity of McCrary which Hood could not appropriate.

Due at least in part to the need for financing, a city no longer simply contracts with an engineering firm to design a complete sewer project. Instead, it may contract initially for a preliminary study. After that study is completed, the city normally seeks financing, for example, from the Federal Government. If funds are available, the city then takes bids from engineering firms for preparation of plans and specifications (the "planning contract") for the project. Inspection of construction may be made the subject of a third contract. Danielsville utilized the bifurcated procedure. McCrary entered into and completed the preliminary study contract with Danielsville before Hood resigned from McCrary on July 31, 1979. On that date McCrary had no contract as such with Danielsville. However, McCrary, Southeast and others were invited to bid on the planning contract for preparation of plans and specifications. Ultimately, Southeast was prohibited from entering into this contract after McCrary posted bond, and the planning contract was awarded to another firm. The threshold question is: Was the Danielsville planning contract a business opportunity of McCrary? No Georgia case has defined a "business opportunity" since Code § 22-714 was amended in 1968. Many courts which have dealt with this question have failed to devise an all inclusive definition or test. See cases analyzed in Miller v. Miller, 301 Minn. 207 (222 NW2d 71, 79) (1974), 77 ALR3d 941, 955.

In Miller v. Miller, supra (which is examined at length by James E. Nervig in "Corporate Opportunity", 2 Journal of Corporation

Law, pp. 405-420 (1977)), the Minnesota Supreme Court recognized three tests or standards for identifying a business opportunity (222 NW2d at 79-80; 77 ALR3d at 955-956): "(1) The 'interest or expectancy' test, which precludes acquisition by corporate officers of the property of a business opportunity in which the corporation has a 'beachhead' in the sense of a legal or equitable interest or expectancy growing out of a preexisting right or relationship; (2) the 'line of business' test, which characterizes an opportunity as corporate whenever a managing officer becomes involved in an activity intimately or closely associated with the existing or prospective activities of the corporation; and (3) the 'fairness' test, which determines the existence of a corporate opportunity by applying ethical standards of what is fair and equitable under the circumstances." (Footnotes citing cases utilizing the three tests, omitted.) Some of the leading cases as to each of these three tests appear to be Lincoln Stores, Inc. v. Grant, 309 Mass. 417 (34 NE2d 704) (1941); Guth v. Loft, Inc., 23 Del. Ch. 255 (5 A2d 503, 511) (1939); Durfee v. Durfee & Canning, Inc., 323 Mass. 187 (80 NE2d 522, 528-529) (1948), respectively. The Minnesota court combined the "interest or expectancy" test into the "line of business" test (see 222 NW2d at 81, 77 ALR3d at 957), and adopted both the expanded "line of business" test and the "fairness" test in a two-step process for determining the ultimate question of when liability for wrongful appropriation of a business opportunity should be imposed. "In order to impose liability for an official's appropriation of a business opportunity, a court must resolve two inquiries. First, a court must determine whether the appropriated opportunity was in fact a business opportunity rightfully belonging to the corporation. If a court finds that the business opportunity was *not* a corporate opportunity, the directors or officers who pursued the opportunity for personal benefit are immune from liability. However, if the court finds that the business opportunity was a bona fide corporate opportunity, the court must determine whether the corporate official violated a fiduciary duty in appropriating that opportunity." Nervig, "Corporate Opportunity," supra. Regarding the second step the Miller court said (222 NW2d at 81, 77 ALR3d at 958): "If, however, the opportunity is found to be a corporate one, liability should not be imposed upon the acquiring officer if the evidence establishes that his acquisition did not violate his fiduciary duties of loyalty, good faith, and fair dealing toward the corporation."

Our statute (Code § 22-714 (a) (1) (C)) prohibits an officer or director from appropriating "in violation of his *duties* . . . any *business opportunity* of the corporation." (Emphasis supplied.) The statute recognizes both the violation of duty and the appropriation of

a business opportunity of the corporation. We therefore adopt the two step process approved in Miller, supra.

However, we find that, insofar as former officers are concerned, adoption of the "line of business" test could preclude a former officer from competing with his former employer. Therefore, as to former officers we adopt the "interest or expectancy" test as the threshold inquiry or first step in former officer cases.[2]

In the case now before us, the two step process establishes liability. (1) The Danielsville planning contract was an opportunity in which the corporation had a "beachhead" in the sense of an equitable expectancy growing out of a pre-existing relationship. (2) The former officer violated his fiduciary duties of loyalty, good faith and fair dealing toward the corporation.

Specifically, we find (1) that the Danielsville planning contract fell within the scope and ability of McCrary's business and that McCrary had both an interest and expectancy in that contract growing out of its prior relationship (the preliminary study contract) and including in this case the fact that McCrary was invited to and did bid on the planning contract; and (2) that Southeast was born, incubated and nourished within McCrary at McCrary's expense, and that Hood violated his fiduciary duties of loyalty, good faith and fair dealing as to McCrary in creating and operating Southeast within McCrary but without McCrary's actual knowledge, and in hiring McCrary's engineers and inspectors en masse. Further, we find that Southeast's expectancy in the Danielsville contract arose because of McCrary's preliminary study contract and good will. The fact that McCrary was not awarded the Danielsville planning contract is immaterial, particularly in view of the facts in this case that Southeast had hired the McCrary employees who would have been best able to perform that contract.

Defendants argue that they are entitled to a jury trial on the question of whether the Danielsville planning contract was a "business opportunity." This is a suit in equity for temporary injunction and the right of trial by jury does not apply.

The trial court did not err in finding that the Danielsville planning contract was a business opportunity of McCrary and did not err in enjoining Hood, his corporation and its agents from accepting

---

[2]Because Southeast was created within McCrary long before Hood's resignation, Hood is not in position to claim former officer status entirely. See Standard Brands, Inc. v. U. S. Partition & Packaging Corp., 199 FSupp. 161 (E.D. Wisc. 1961). Were we to apply the "line of business" test to Hood because of acts performed while he was president of McCrary, the result would be the same.

the Danielsville contract.
*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 4, 1980 — DECIDED OCTOBER 7, 1980.

*Robert A. Elsner, Garett Backman, T. Thomas Vance,* for appellants (Case No. 36307).

*Henry M. Hatcher, Jr.,* for McCrary Engineering Corporation.

*James R. Henson, Robert A. Elsner, Garett Backman, Macon Gooch, J. Thomas Vance,* for appellees (Case No. 36308).