42261. DIEDRICH et al. v. MILLER & MEIER & ASSOCIATES, ARCHITECTS & PLANNERS, INC.

(334 SE2d 308)

GREGORY, Justice.

We granted certiorari to consider two of the issues raised in *Miller & Meier & Associates, Architects and Planners, Inc. v. Diedrich,* 174 Ga. App. 249 (329 SE2d 918) (1985). Our concern is with (A) the application of OCGA § 14-2-153 (a) (1) (C) (wrongful appropriation of a corporate business opportunity) to an officer and director of a foreign corporation, and (B) awarding damages, rather than injunctive relief, for infringement of a trade name. In the trial court a Wisconsin corporation (Miller & Meier) received a jury verdict in its favor against its former officer and director (Diedrich) and his separate Georgia corporation. The trial judge awarded a judgment notwithstanding the verdict in favor of Diedrich and the Georgia corporation.[1] OCGA § 9-11-50 (b). The Court of Appeals reversed.

The Wisconsin corporation[2] was a Milwaukee architectural firm organized under the laws of Wisconsin in 1970. Of the 7,660 outstanding shares of the corporation, 5,100 were owned by Miller, 760 by Diedrich and the remainder by others. Diedrich was an officer and director. The Wisconsin corporation opened a branch in Atlanta and secured a certificate of authority to transact business in Georgia pursuant to the requirements of our statute which is currently codified at

---

[1] The jury also rendered a verdict in favor of Diedrich on a counterclaim. There is no issue on appeal arising out of that verdict.

[2] Miller & Meier & Associates, Architects and Planners, Inc., plaintiff below and appellee here, is the current name of the corporation. Miller, Waltz, Diedrich Architects & Associates, Inc. was the original name.

OCGA § 14-2-310. Diedrich moved to Georgia in 1972 for the purpose of managing the Atlanta branch for the Wisconsin corporation. In 1978 Diedrich formed a Georgia corporation, M. W. D. Architects Atlanta, Inc. He was the sole shareholder. The Georgia corporation was operated from the same office as the Wisconsin corporation. In 1982 the shareholders of the Wisconsin corporation removed Diedrich as an officer and director and the corporation brought this action against him and the Georgia corporation in Fulton Superior Court. A jury verdict in the amount of $130,000 was rendered against Diedrich and the Georgia corporation. It was, as already indicated, set aside by the trial judge who granted j.n.o.v. against the Wisconsin corporation. One of the grounds upon which j.n.o.v. was granted was that OCGA § 14-2-153 (a) (1) (C) does not apply to the Georgia director of a foreign corporation. In Division 2 of the Court of Appeals' opinion the trial court was reversed on this issue. The Court of Appeals reasoned that a foreign corporation which obtains a certificate of authority enjoys the same rights and privileges as a Georgia corporation, and likewise, is subject to the same duties, restrictions, penalties, and liabilities. OCGA § 14-2-311. From this the court concluded that if a Georgia corporation is afforded protection against wrongful appropriation of business opportunities by officers and directors under Georgia law, the same protection is to be afforded to foreign corporations which have obtained a certificate of authority.

In Division 5 the Court of Appeals reversed the trial court ruling that Georgia does not recognize a common law action for damages against trade name infringement. It affirmed the ruling that a "logo" or trademark must be registered before an action will lie for its infringement.

1. In our view the Court of Appeals, in Division 2 of its opinion, failed to give proper consideration to OCGA § 14-2-310. This section of the Business Corporations Code requires a foreign corporation to obtain a certificate of authority before it has the right to transact business in Georgia. However, the section provides that ". . . nothing contained in this Chapter (Chapter 2 of Title 14 - Business Corporations) shall be construed to authorize this state to regulate the organization or the internal affairs of such corporation. (A foreign corporation with a certificate of authority.)" This is a recognition of the internal affairs doctrine which has been described as ". . . involved whenever the issue concerns the relations inter se of the corporation, its shareholders, directors, officers or agents. . . ." Restatement 2d Conflict of Laws, § 313 a.[3] We hold that the wrongful appropriation of

---

[3] We do not address the question whether the Georgia courts should decline to exercise jurisdiction due to the inconvenience of forum or other reasons. Rather, we address the choice of law issue.

a business opportunity of a foreign corporation by its officer or director is an internal affair not to be regulated by Georgia law. Instead, the local law of the state of incorporation applies, which is Wisconsin in this case. Restatement 2d Conflict of Laws, § 309.[4] See Kaplan, Stanley H., "Foreign Corporations and Local Corporate Policy," 21 Vand. L. Rev. 433, 464-5 (1968).[5]

*Southeast Consultants, Inc. v. McCrary Engineering Corp.*, 246 Ga. 503 (273 SE2d 112) (1980) has been cited for a contrary result. However, the choice of law issue we now decide was simply not presented there.

2. Turning now to the trade name issue we point out that this court has previously held that Georgia protects trade names by statute and by common law. *Giant Mart Corp. v. Giant Discount Foods, Inc.*, 247 Ga. 775 (279 SE2d 683) (1981). Diedrich and the Georgia corporation contend the common law right was displaced by enactment of the Uniform Trade Practices Act. OCGA § 10-1-371 et seq. However, we find the Act expressly preserves common law rights in this regard. OCGA §§ 10-1-372 (c) and 373 (c).

The contention is made that if the right to protection of a trade name exists, the remedy is limited to injunctive relief and damages do not lie. We disagree. "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." OCGA § 51-1-6. See also *Hagan & Dodd Co. v. Rigbers*, 1 Ga. App. 100 (57 SE 970) (1907).

---

[4] See § 309, Comment c. "Acts done by directors or other corporate officers in their official capacity may be grouped under two broad categories. Within the first category fall acts, such as the issuance of stock and the declaration of dividends, which closely affect the organic structure or internal administration of the corporation. Issues relating to the validity of such acts, and to any resulting liability on the part of the directors and officers, cannot practicably be determined differently in different states. It would be impracticable, for example, for a share issue or declaration of dividends to be valid in one state and invalid in another. In the absence of a statute to the contrary, the local law of the state of incorporation will be applied in the great majority of instances to determine issues of this sort. . . .

"Within the second category fall acts, such as seizing a corporate opportunity or causing the making of a contract or the commission of a tort. Issues relating to the liability of the directors and officers for acts such as these can practicably be decided differently in different states. It would be practicable, for example, for a director to be held liable for a given act in one state and to be held not liable for an identical act in another state. Nevertheless, in the absence of an applicable local statute, the local law of the state of incorporation has usually been applied to determine the liability of the directors or officers for acts such as these to the corporation, its creditors and shareholders. . . ."

[5] Perhaps a new trial could have been avoided if the law of Wisconsin governing appropriation of corporate business opportunities is substantially like the Georgia law. See *Gauger v. Hintz*, 262 Wis. 333, 351-52 (55 NW2d 426, 435-36) (1952); *Borden v. Sinskey*, 530 F2d 478, 489-90 (3rd Cir. 1976). However, a new trial is required in any event by Division 3 of the Court of Appeals' opinion on issues which are not before us.

If on retrial Miller & Meier contends that it has rights relating to its "logo" it may clarify whether those rights are claimed as part of a trade name as considered in the preceding paragraph or as part of a service mark or trademark under OCGA § 10-1-440 et seq. We agree with the Court of Appeals that registration of the "logo" as a service mark or trademark is a prerequisite to relief under OCGA §§ 10-1-450 and 451.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Weltner, J., who dissents.*

WELTNER, Justice, dissenting.

I respectfully dissent.

I agree with the majority's recognition of the internal affairs doctrine at Division 1 of the opinion. I disagree, however, that our statute, OCGA § 14-2-153 (a) (1) (C), prohibiting the wrongful appropriation of a business opportunity is a regulation pertaining to "an internal affair." Rather, it is a substantive and important expression of public policy relative to the standard of conduct required of a fiduciary. As such, it relates no more to "internal affairs" than would a criminal statute imposing sanctions for the theft by a director of the property of his corporation.

DECIDED SEPTEMBER 26, 1985.

*Freeman & Hawkins, Howell Hollis III, T. Ryan Mock, Jr.,* for appellants.

*Mayer & Nations, Randolph A. Mayer, Michael T. Nations,* for appellee.

*King & Spalding, Frank C. Jones, John D. Hopkins, Michael J. Egan III,* amicus curiae.