## A00A0470. JENKINS v. SMITH et al.
### (535 SE2d 521)

ELLINGTON, Judge.

A Fulton County jury awarded Richard T. Smith, P.C., a legal professional corporation, $600,000 on the firm's claim against Stephen L. Jenkins, a former member of the firm, for misappropriation of firm property. The jury awarded Jenkins nothing on his counterclaim for the value of his one-half interest in the firm on the date of his departure. Jenkins appeals the denial of his motion for judgment notwithstanding the verdict ("j.n.o.v.") or for a new trial. Because the evidence did not support the verdict, we reverse.

1. Jenkins contends the trial court erred in denying his motion for j.n.o.v. or for a new trial in that the evidence did not authorize the jury to find that he misappropriated a corporate opportunity. He further contends the evidence did not support the amount of the jury's verdict for misappropriation of firm assets. We agree.

> In reviewing a trial court's decision on a motion for j.n.o.v., the question before this court is not whether the verdict and the judgment of the trial court [were] merely authorized, but is whether a contrary judgment was demanded. A judgment n.o.v. is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion.

(Citations and punctuation omitted.) *Bull Street Church of Christ v. Jensen*, 233 Ga. App. 96 (504 SE2d 1) (1998).

Viewed in the light most favorable to the firm, the firm presented the following evidence that Jenkins misappropriated firm property: for over six years, Jenkins was an attorney employee of the professional corporation of which Smith was a half owner. In late 1987, Jenkins bought 50 percent of the firm's shares and became an equal owner with Smith in what was then known as Smith & Jenkins, P.C.

For over seven years, Jenkins managed and performed real estate closings at the firm's office at 3115 Roswell Road ("the Cobb office"); meanwhile, Smith managed and performed real estate closings at the firm's office at Perimeter Center. The firm originally set

up the Cobb office at the suggestion of the manager of the Coldwell Banker residential real estate broker which had an office next door.

Jenkins announced his intention to withdraw from the firm at the end of 1994. Jenkins did not sell his shares in the firm, nor did Jenkins and Smith, as co-owners, reach a formal agreement regarding disposition of the firm's assets and liabilities. Over Smith's objection, Jenkins simply continued to operate a law practice, including closing real estate loans for the adjacent Coldwell Banker broker's office, at the firm's Cobb office.

We turn first to the corporate business opportunity Jenkins allegedly misappropriated, that is, the opportunity inherent in controlling the firm's Cobb office of doing real estate closings for the nearby Coldwell Banker broker. Both Smith and an accounting expert testified as to the income stream historically generated by the Cobb office and concluded that the profit the Cobb office would have generated in the ten years after Jenkins appropriated it was approximately $1,400,000, discounted to present value. The firm presented no evidence of the value of the lease, apart from the role of the office's location in generating that income stream.

The Georgia Business Corporation Code authorizes an action by a corporation against a director or officer of the corporation to compel an accounting where the officer or director has in violation of his duties appropriated any business opportunity or assets of the corporation. OCGA § 14-2-831 (a) (1) (B), (C).[1] As interpreted by the Supreme Court of Georgia, the business opportunity principle "precludes acquisition by corporate officers of the property of a business opportunity in which the corporation has a beachhead in the sense of a legal or equitable interest or expectancy growing out of a preexisting right or relationship." (Citation and punctuation omitted.) *Southeast Consultants v. McCrary Engineering Corp.*, 246 Ga. 503, 508 (2) (273 SE2d 112) (1980) (an inchoate opportunity to bid on a public works contract was a business opportunity where it was within scope of former employer's business and employer had done a preliminary study of the project and had been invited to bid on the project).

But the Supreme Court of Georgia has specifically rejected recovery for misappropriation of a corporate opportunity where the opportunity consisted of "dealings of long standing" with certain customers, a concept commonly known as "good will." *United Seal &c. Co. v. Bunting*, 248 Ga. 814, 816 (285 SE2d 721) (1982); see id. at 817 (Weltner, J., dissenting). Even where "the sales to [the] customers

---

[1] There is no common law fiduciary duty requiring corporate officials to refrain from using corporate information for personal advantage at the corporation's expense. See *Southeast Consultants v. McCrary Engineering Corp.*, 246 Ga. 503, 506, n. 1 (273 SE2d 112) (1980).

accounted for a large part of the [corporation's] business," continuing the relationship did not fall within *McCrary*'s definition of an inchoate business opportunity where there was no contractual relationship with the company and the customers were not the exclusive customers of the company. *Bunting*, 248 Ga. at 816. Even though "good will" is "a species of property subject to transfer and sale," it lacks the "finite aspect" of a corporate opportunity. Id. at 816; see id. at 817 (Weltner, J., dissenting). See also *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 378 (2) (297 SE2d 473) (1982).

In the absence of evidence that a contractual relationship existed between the Coldwell Banker broker and the firm or that the broker gave the firm all of its business, Jenkins was not liable as a matter of law for appropriating a firm business opportunity. *Bunting*, 248 Ga. at 816; *Singer*, 250 Ga. at 378 (2).

Having concluded that the jury was not authorized to award damages for the firm's lost opportunity, we must consider whether the jury's verdict for misappropriation of firm assets was otherwise supported by the evidence. With regard to the other items Jenkins allegedly misappropriated, that is, the Cobb office's furniture and fixtures, the firm presented evidence that the original cost of the furniture and fixtures had been $127,788; the only evidence of depreciated value at the time Jenkins left the firm was Smith's testimony that the furniture and fixtures were worth in excess of $25,000 at that time. Because the jury's verdict in favor of the firm in the amount of $600,000 greatly exceeded the evidence of the value of the allegedly misappropriated assets, the verdict was not supported by the evidence. *Outdoor Systems v. Woodson*, 221 Ga. App. 901, 903 (2) (473 SE2d 204) (1996). We accordingly hold that the trial court erred in denying Jenkins' motion for new trial.[2] *Tallent v. McKelvey*, 105 Ga. App. 660, 662 (3) (125 SE2d 65) (1962).

2. Jenkins contends the trial court erred in excluding certain business summaries he proffered in support of his counterclaim. The admission of summaries of voluminous business records is discretionary. *First Nat. Bank of Atlanta v. First Nat. Bank of Tucker*, 158 Ga. App. 843-844 (282 SE2d 353) (1981). Furthermore, they were cumulative of Smith's lengthy testimony about the source documents. *Buford v. Benton*, 232 Ga. App. 102, 104 (3) (501 SE2d 272) (1998). Therefore, the trial court's exclusion of the summaries did not

---

[2] Because the entire $600,000 might have been intended by the jury as compensation for the firm opportunity element, the jury's verdict does not necessarily indicate a finding that Jenkins misappropriated the furniture and fixtures. We note there was evidence that Jenkins offered to return the furniture. Therefore, the trial court was not authorized to enter j.n.o.v. to conform to the evidence in the amount of the value of the furniture and fixtures. *Outdoor Systems*, 221 Ga. App. at 903 (2).

demand a new trial on Jenkins' counterclaim; for the reasons given in Division 1, however, the judgment must be reversed.

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED JUNE 7, 2000 —
RECONSIDERATION DENIED JUNE 22, 2000

*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Joan C. Green,* for appellant.

*King & Croft, F. Carlton King, Jr., Thomas A. Croft,* for appellees.