A05A0912, A05A0962. MAU, INC. v. HUMAN TECHNOLOGIES, INC. et al.; and vice versa.

(619 SE2d 394)

ANDREWS, Presiding Judge.

In Case No. A05A0912, MAU, Inc. (MAU) appeals from the partial grant of summary judgment to Herbert Dew, a former vice president of MAU, on Count 4 of its complaint, which alleged breach of the duty of loyalty by Dew. Other former MAU employees John Knight, David Sewell, and Joni Baker were also named in Count 1 (breach of noncompetition and nonsolicitation covenants) and Count 5 (tortious inducement by Human Technologies, Inc. (HTI), Knight, Sewell, and Baker of Dew to leave MAU) as to which summary judgment was also granted.[1] HTI, a competing company formed by these former MAU employees, was dismissed as a party following the trial court's grant of summary judgment on Counts 1, 4, and 5, because HTI was not a defendant in Counts 2, 3, and 6, as to which the trial court denied the defendants' motion for summary judgment. In Case No. A05A0962, Dew, Knight, Sewell, and Baker cross-appeal from the trial court's denial of their motion for summary judgment on

---

[1] The grant of summary judgment on these two counts has not been appealed by MAU.

Count 2 (tortious interference with business contracts and relationships) and Count 3 (inducing MAU employees to discontinue employment) of MAU's complaint. Count 6 (computer theft and trespass by the individual defendants) remains pending below.

> To obtain summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal, this Court applies a de novo standard of review and must draw all inferences in favor of the nonmoving party. If, however, there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

(Footnotes omitted.) *Jerry Dickerson Presents, Inc. v. Concert/Southern Chastain Promotions*, 260 Ga. App. 316, 322 (579 SE2d 761) (2003).

So viewed, the evidence was that MAU was a human resource and staffing service founded in 1973 and headquartered in Augusta, Georgia. Dew joined the company in 1985 and became one of its vice presidents in the early to mid 1990s. As vice president, Dew was responsible for the professional services and office services divisions of MAU and he understood that, while employed by MAU, he owed it a duty not to use company time or his knowledge as an officer to advance a competing business. Dew signed a contract containing a noncompete clause, and the contracts signed by Baker, Knight and Sewell contained client/employee nonsolicitation clauses.[2]

MAU's strategic planning, in which some of these four employees were involved, included seeking future growth in Greenwood, South Carolina.[3] Dew began working on the strategic plan in late 1996, and was to contact Fuji and Kemet representatives in Greenwood in an effort to obtain outsourcing placements. In fact, Dew made calls to Fuji in 1996 and 1997 in an attempt to solicit business for MAU, but "you couldn't get a call or a phone call back from them. . . . I really was frustrated with it. I didn't have a relationship with anybody at Fuji, so it was a dead call."

Sewell and Knight first mentioned to Dew the prospect of leaving MAU and forming a new entity in early 1998. During the summer of 1998, Dew continued to consider whether that was something he

---

[2] These clauses were found unenforceable by the trial court, and that portion of the judgment has not been appealed.

[3] Greenwood was not one of the geographic areas listed in the noncompete and nonsolicitation clauses.

would be interested in doing. In the fall of 1998, the three men met on two or three Saturdays away from MAU to discuss how such an entity would be organized and financed and where it would be located. Although Sewell and Knight were enthusiastic about a new venture, Dew was very nervous "because I wasn't sure that I wanted to do it really up until the very end." Dew did not finally decide to go with the other employees until April 1999. Eventually, they decided to go ahead and start HTI and locate their initial office in Greenwood, South Carolina. Greenwood was chosen because, in addition to not being included in their employment/nonsolicitation agreements with MAU, it was equidistant from Augusta and Greenville, where they resided.

An attorney was contacted in February 1999, and HTI was incorporated in South Carolina, effective May 4, 1999. An office lease in Greenwood also became effective when HTI took occupancy on May 4 or 5. On May 3, 1999, Dew, Knight, Sewell, and Baker tendered their resignations to MAU.

Dew and the others purchased a directory listing businesses in the area from the Greenwood Chamber of Commerce and started their business from scratch by contacting these companies. All of the former MAU employees, either through affidavit or deposition, averred that, prior to leaving MAU, they did not contact or solicit any MAU customers on behalf of HTI, take any confidential documents or information from MAU when they left, or divulge, disclose, or use any confidential information of MAU in setting up HTI. HTI's first placement was made in Greenwood on July 15, 1999, and all the placements made by HTI during its first year were at companies that were not former customers of MAU.

Hatcher, president of MAU, said that Dew was a good worker during his tenure and that he had no documentation to show that Dew or Sewell were "ever reprimanded, disciplined [or] criticized for their failure to develop business in Greenwood prior to May of 1999." The other named defendants were also described by Hatcher as competent and effective employees prior to leaving MAU. Hatcher acknowledged that MAU had not done business with Fuji or Kemet, another Greenwood business, prior to May 1999.

*Case No. A05A0912*

1. In its first enumeration of error, MAU argues that the trial court erred in holding that MAU did not have a "beachhead" or reasonable interest or expectancy in Greenwood accounts and, therefore, Dew was entitled to summary judgment on Count 4, breach of loyalty.

Pursuant to OCGA § 14-2-831 (a) (1) (C), a corporation may sue an officer or director for "[t]he appropriation, in violation of his duties, of any business opportunity of the corporation." In *Southeast Consultants v. McCrary Engineering Corp.*, 246 Ga. 503 (273 SE2d 112) (1980), the Supreme Court adopted a two-step process for determining the ultimate question of when liability for wrongful appropriation of a business opportunity should be imposed.

First, a court must determine whether the appropriated opportunity was in fact a business opportunity rightfully belonging to the corporation. If a court finds that the business opportunity was *not* a corporate opportunity, the directors or officers who pursued the opportunity for personal benefit are immune from liability.

(Citations and punctuation omitted; emphasis in original.) Id. at 508 (2).

"A business opportunity arises from a 'beachhead' consisting of a legal or equitable interest or an 'expectancy' growing out of a pre-existing right or relationship." *United Seal & [Rubber] Co. v. Bunting*, 248 Ga. 814, 815 (285 SE2d 721) (1982). In *United Seal*, the trial court denied the company's petition for an interlocutory injunction, and the Supreme Court considered "whether dealing with certain customers amounted to 'business opportunities' " in a suit against three former corporate officers. Id. at 814. The Court concluded that "the customers of United Seal did not constitute business opportunities." Id. at 816. *Although the company had dealings of long standing with the customers, whose sales accounted for a large portion of its income, no contractual arrangement existed between the company and customers; the customers had no exclusive arrangement with the company; and "the opportunity suggested was an ongoing [one] with no finite aspect."* Id. Further explicating *United Seal's* holding, the Supreme Court held that "the opportunity of dealing with certain customers did not constitute a business opportunity." *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 378 (2) (297 SE2d 473) (1982). Because an accountant's servicing of his former corporation's clients did not constitute a business opportunity, the Court did not need to determine whether the accountant violated any of his fiduciary duties while an officer. Id.

(Emphasis supplied.) *Bob Davidson & Assoc. v. Norm Webster & Assoc.*, 251 Ga. App. 56, 62 (3) (553 SE2d 365) (2001).

As stated in *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 587 (2) (397 SE2d 699) (1990), "[t]he burden of proof with regard to the threshold question [of whether an opportunity presented to a corporate fiduciary is a 'corporate' opportunity] rests 'upon the party attacking the acquisition.'" (Citations omitted.)

Here, in response to the unequivocal denials by Dew and the others that they did anything on MAU time or with MAU resources to further their planned company, MAU argues only that it should have gotten business from Greenwood companies prior to their leaving, but did not. Other than this speculation, however, the only evidence pointed to by MAU is its argument that Dew and the others must have either printed out or electronically copied the information in their computers before wiping them clean[4] and turning them back to MAU, and that the presumption arising from spoliation of evidence is enough to defeat summary judgment.[5]

Any such evidence, however, appears not to be relevant to whether there was a business opportunity for MAU in Greenwood, as discussed above. It would come into play only in analysis of the second premise, i.e., whether Dew had violated his fiduciary duty to MAU. We need not reach that issue, however, there having been no proof of such a business opportunity.[6]

There was no error in the trial court's grant of summary judgment to Dew on the claim of breach of fiduciary duty. *Instrument Repair Svc. v. Gunby*, 238 Ga. App. 138, 141 (2) (518 SE2d 161) (1999); see *Jenkins v. Smith*, 244 Ga. App. 541, 543 (1) (535 SE2d 521) (2000).

*Case No. A05A0962*

2. In their first enumeration of error, Dew and the other former MAU employees contend that the trial court erred in denying their

---

[4] All defendants denied doing so, however, except that personal e-mails were deleted. Nonetheless, in this procedural context, we assume, without deciding, that information was taken from MAU computers regarding customer prospects in Greenwood.

[5] *Cavin v. Brown*, 246 Ga. App. 40 (538 SE2d 802) (2000) and *Bennett v. Associated Food Stores*, 118 Ga. App. 711, 716 (2) (165 SE2d 581) (1968), relied upon by MAU, both involved parties who admitted having destroyed records solely available to them and in their possession. In both cases, this Court acknowledged the general rule that spoliation of evidence raises a presumption against the spoliator.

[6] Even were there proof of such a business opportunity, copying and using customer lists of a former employer in setting up a new competing business, absent a valid noncompete or nonsolicitation contract, is not a breach of a fiduciary duty. *Bacon v. Volvo Svc. Center*, 266 Ga. App. 543, 546 (3) (597 SE2d 440) (2004).

motion for summary judgment on Count 2, tortious interference with business contracts and relationships.[7] We agree.

In Count 2 of its complaint, MAU alleged that *"[u]nder the employment agreements with Defendants,* Defendants had a duty not to interfere with the business contracts and relationships that MAU had with its customers, applicants, placements[,] and contract employees." (Emphasis supplied.)

The trial court's order denying defendants' motion for summary judgment on this count merely states that factual issues remain. As stated above, however, the trial court's grant of summary judgment to defendants, holding that the noncompetition and nonsolicitation covenants were nonenforceable, has not been appealed. As Count 2 was stated, absent the validity of these clauses, there was no legal duty of defendants which could have been breached as the basis for a tortious interference claim. See *Flanigan v. Executive Office Centers,* supra; *Constr. Lender, Inc. v. Sutter,* 228 Ga. App. 405, 409 (2) (491 SE2d 853) (1997); *Bowdish v. Johns Creek Assoc.,* 200 Ga. App. 93, 94 (3) (406 SE2d 502) (1991).

Even assuming such a duty had been demonstrated, however, a review of the record shows that MAU was unable to identify any of its customers who were improperly contacted by defendants on behalf of HTI during defendants' employment by MAU. This failure to produce evidence also entitled defendants to summary judgment on this claim. *Bacon v. Volvo Svc. Center,* supra; *Lively v. McDaniel,* 240 Ga. App. 132, 134-135 (3) (522 SE2d 711) (1999).

Finally, even assuming that a duty existed and MAU clients were contacted improperly by defendants, defendants were entitled to summary judgment on Count 2 because application of the "stranger doctrine" precludes MAU's claims as a matter of law.

> To be liable for tortious interference to a contract or a business relationship, the defendant must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract. . . . *Atlanta Market Center Mgmt. Co. v. McLane,* 269 Ga. 604, 609 (2) (503 SE2d 278) (1998); see also *Jefferson-Pilot Communications Co. v. Phoenix City Broadcasting &c.,* 205 Ga. App. 57, 60 (1) (421 SE2d 295) (1992).

---

[7] We reject MAU's argument, based on *MacDonald v. MacDonald,* 156 Ga. App. 565 (1) (275 SE2d 142) (1980), that defendants did not make the arguments presented here below. See *Flanigan v. Executive Office Centers,* 249 Ga. App. 14, 16 (1) (546 SE2d 559) (2001).

*Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 209 (4) (a) (605 SE2d 892) (2004). See also *Physician Specialists &c. v. MacNeill*, 246 Ga. App. 398, 406 (4) (539 SE2d 216) (2000).

Defendants were not strangers to the relationships between MAU and its clients.

3. Defendants' second enumeration, that they were entitled to summary judgment on Count 3 regarding solicitation by HTI of MAU employees, is also meritorious under the analysis in Division 2. There were no valid nonsolicitation covenants in place and the only evidence of any contact with MAU employees put forth by MAU occurred after defendants left MAU employment. Therefore, defendants were also entitled to summary judgment on Count 2. *Bacon v. Volvo Svc. Center*, supra.

*Judgment affirmed in part in Case No. A05A0912. Judgment reversed in part in Case No. A05A0962. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 4, 2005.

Hull, Towill, Norman, Barrett & Salley, William J. Keogh III, David E. Hudson, for appellant.

Tucker, Everitt, Long, Brewton & Lanier, Thomas W. Tucker, for appellees.