### A09A1305. BREWER v. INSIGHT TECHNOLOGY, INC.
(689 SE2d 330)

PHIPPS, Judge.

A jury found Darren Brewer, former president of Insight Technology, Inc. ("ITI"), liable to ITI on claims of breach of fiduciary duty and misappropriation of corporate opportunity. The trial court entered a judgment for $395,000 in compensatory damages, $650,000 in punitive damages and $355,000 in attorney fees in favor of ITI. Brewer argues on appeal that the trial court erred: (1) by denying Brewer's motion for directed verdict on the claim for misappropriation of corporate opportunity; (2) by improperly charging the jury on the definition of corporate opportunity; (3) by awarding punitive damages in excess of the $250,000 cap; and (4) by refusing to set off a $1.7 million settlement between ITI and other joint tortfeasors against ITI's jury award. Finding no error, we affirm.

Gary Aliengena formed ITI in 1996 as an internet-based load board business for the trucking industry. Like a traditional trucking load board, the business matched truckers with freight-hauling jobs. Because the business was based on-line, it was able to match truckers with jobs as they became available in real time. At the company's inception, Aliengena hired Brewer as director of marketing. Within months, Brewer became the company's president, overseeing all daily activities, while also working on the technical aspects of the business, including software and website development. In about 1998, ITI expanded its business to include freight factoring, and eventually created a division called FactorLoads. The factoring division, which offered financing to small, independent truckers looking for temporary or one-time jobs, aimed to fill a need within a niche market.

By 2000, Brewer met Pat Hull, who owned a competing load board business, GetLoaded.com, LLC ("GetLoaded"). Hull expressed to Brewer his interest in the factoring business. Brewer attempted to persuade Hull to allow ITI to advertise on GetLoaded's website, but Hull refused.

In 2002, Hull incorporated FreightCheck, LLC, an internet-based factoring business in competition with ITI's FactorLoads. Brewer was made an equal co-owner of FreightCheck with Hull, and they shared responsibility for managing and operating the company. Brewer operated FreightCheck out of the same building as ITI; used the same software for the two businesses; and directed ITI employees to work clandestinely for FreightCheck. Meanwhile, Aliengena was unaware of the formation of FreightCheck and Brewer's daily involvement therein.

By 2003, FactorLoad's revenues had diminished compared with

the previous year. Brewer urged Aliengena to sell ITI to GetLoaded, and in 2004 Aliengena agreed. Before the sale was executed, however, an employee of ITI revealed to Aliengena that Brewer was a co-owner and manager of FreightCheck. Aliengena fired Brewer, and ITI filed suit against Brewer, Hull, GetLoaded, and FreightCheck.

The trial court granted summary judgment to Hull, GetLoaded, and FreightCheck, and partial summary judgment to Brewer. In *Insight Technology v. FreightCheck, LLC*,[1] we reversed summary judgment in favor of ITI against Hull, GetLoaded, and FreightCheck. Those three defendants subsequently settled with ITI, and Brewer went to trial.

1. Brewer contends that the trial court erred when it denied his motion for a directed verdict on ITI's claim for misappropriation of corporate opportunity. We review the denial of a motion for a directed verdict for whether any evidence exists to sustain the verdict.[2] Under this standard, the determinative question is not whether the verdict and the judgment of the trial court were merely authorized, but whether a contrary judgment was demanded.[3] If any evidence, viewed in the light most favorable to the victor, supported the jury's verdict, denial of the motion was not error.[4]

A corporation may sue an officer or director for "the appropriation, in violation of his duties, of any business opportunity of the corporation."[5] In *Southeast Consultants v. McCrary Engineering Corp.*,[6] the Supreme Court of Georgia stated:

> In order to impose liability for an official's appropriation of a business opportunity, a court must resolve two inquiries. First, a court must determine whether the appropriated opportunity was in fact a business opportunity rightfully belonging to the corporation. If a court finds that the business opportunity was *not* a corporate opportunity, the directors or officers who pursued the opportunity for personal benefit are immune from liability. However, if the court finds that the business opportunity was a bona fide corporate opportunity, the court must determine whether the corporate official violated a fiduciary duty in appropriating that opportunity.[7]

---

[1] 280 Ga. App. 19, 20 (633 SE2d 373) (2006).

[2] See *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 142 (2) (460 SE2d 854) (1995).

[3] Id.

[4] Id. at 142-143.

[5] OCGA § 14-2-831 (a) (1) (C).

[6] 246 Ga. 503, 508 (273 SE2d 112) (1980).

[7] Id. (citations and punctuation omitted; emphasis in original).

In determining whether the appropriated opportunity was a business opportunity rightfully belonging to the corporation, we have adopted the following test as to current officers:

> [I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself.[8]

The evidence showed that ITI and GetLoaded were both engaged in the business of load boarding. While ITI had an established factoring division, Hull wished to develop a factoring business for GetLoaded or another entity under his control. The evidence further suggested that during 2002 and earlier, ITI was financially able to undertake the new opportunity which ultimately became Freight-Check. Moreover, because the bulk of ITI's business came from factoring, ITI was financially poised to benefit from a merger with another factoring company. Aliengena testified that it would have been financially advantageous for ITI to have given up its load board business in a merger with GetLoaded. However, by 2003, after Brewer had been working at FreightCheck for several months to a year, ITI's gross sales had significantly reduced. Brewer, acting as president of ITI, actively explored with Hull the possibility of ITI and GetLoaded combining their marketing efforts, with ITI marketing its services on GetLoaded's website. The jury was thus authorized to find that ITI had an interest or reasonable expectancy in Freight-Check prior to its formation. However, Brewer and Hull created FreightCheck to the exclusion of ITI. The evidence was sufficient to support the verdict on the first part of the *McCrary* test.

The evidence also supported the verdict with respect to the second *McCrary* requirement — showing a breach of fiduciary duty.[9] A corporate officer owes its corporation the duties of utmost good faith and loyalty.[10] A current officer may not engage in direct

---

[8] *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 288-289 (3) (a) (520 SE2d 517) (1999) (citations, punctuation and emphasis omitted).

[9] *McCrary*, supra.

[10] See *Hilb, Rogal & Hamilton Co. &c. v. Holley*, 295 Ga. App. 54, 57-58 (2) (670 SE2d 874) (2008).

competition with the corporation's business.[11] The evidence supported the jury's finding that when Brewer became a co-owner of FreightCheck, while remaining an officer of ITI, he engaged in competition, in breach of his fiduciary duties to ITI. The trial court did not err in denying Brewer's motion for directed verdict.

Brewer contends that because ITI was incorporated in Delaware, the law of that state should apply to the definition of a corporate opportunity.[12] But as ITI correctly points out, a party must give adequate notice of the intent to rely on the law of a foreign jurisdiction.[13] Brewer did not raise the issue of the applicability of Delaware law until a post-trial motion. Because Brewer did not give adequate notice of his intention for Delaware law to apply to the misappropriation of corporate opportunity claim, the trial court did not err when it applied Georgia law.[14]

2. Brewer contends the trial court erred in refusing to give his requested jury charge on misappropriation of corporate opportunity, and in giving an instruction which he argues was erroneous. He further contends that this error "contamina[ted]" the jury's consideration of a separate breach of fiduciary duty claim against him. For an allegedly erroneous jury instruction to constitute reversible error, the instruction must be both erroneous and harmful.[15] A trial court does not err in refusing to give a requested jury charge where the charge given substantially covers the principles contained in the request.[16]

In charging the jury on the misappropriation claim, the court employed *McCrary's* two-part test.[17] Pursuant to the first part of the test, the trial court defined a corporate opportunity as follows:

> a corporate opportunity is a business opportunity which a corporation is financially able to undertake, is in the same

---

[11] Id. at 58.

[12] *Diedrich v. Miller & Meier & Assoc. &c.*, 254 Ga. 734, 735-736 (1) (334 SE2d 308) (1985) (law of state of local incorporation applies to claim of wrongful appropriation of business opportunity of foreign corporation).

[13] See OCGA § 9-11-43 (c) (a party who intends to raise an issue concerning the law of another state shall give notice in his pleadings or other reasonable written notice).

[14] See *Godinger Silver Art Co. v. Olde Atlanta Marketing*, 269 Ga. App. 386, 389 (2) (604 SE2d 212) (2004) (court did not err in applying Georgia law where party did not give notice in pleading of intent to apply law of another state in which corporation was incorporated, but raised issue for the first time two days before final order entered in case); *Fortson v. Fortson*, 204 Ga. App. 827, 828 (1) (421 SE2d 106) (1992) (notice of intent to rely on foreign law was inadequate when it was first given at a hearing on motion for directed verdict).

[15] See *Buford-Clairmont Co., Ltd. v. RadioShack Corp.*, 275 Ga. App. 802, 806 (4) (622 SE2d 14) (2005).

[16] See *Nails v. Rebhan*, 246 Ga. App. 19, 22 (3) (538 SE2d 843) (2000).

[17] Supra.

line of business as the corporation's business, is of practical advantage to the corporation, and is one that the corporation has an interest or reasonable expectancy in.

Brewer complains that the trial court incorrectly charged the jury on the portion of the standard which pertains to a corporation's "interest or expectancy." He contends that the charge should have employed other language from *McCrary*, which refers to a corporation's interest or expectancy as "a beachhead in the sense of a legal or equitable interest or expectancy growing out of a preexisting right or relationship."[18]

We disagree. The language Brewer requested pertains to cases of misappropriation of corporate opportunity by former officers.[19] The language adopted by the trial court mirrors the language we have used when analyzing a case of misappropriation of corporate opportunity by a current officer.[20] Because the jury charge accurately stated the law, Brewer was not deprived of a fair trial and did not experience a gross injustice.[21] The trial court did not err in its jury instruction on corporate misappropriation.

Brewer also contends that the jury should have been charged according to Delaware law. As discussed in Division 1, supra, this contention has no merit.

3. The trial court bifurcated the trial to include a separate phase on the amount of punitive damages.[22] Brewer contends that the trial court erred when it refused to limit the punitive damages award to $250,000, the statutory cap set forth in OCGA § 51-12-5.1 (f) and (g). We review this claim under the any evidence standard of review,[23] and find no reversible error.

Punitive damages may be awarded in tort actions where it is proven by clear and convincing evidence that "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."[24] The statutory cap of $250,000 on punitive damages may be lifted where the trier of fact

---

[18] Id. at 508 (punctuation omitted).

[19] See *McCrary*, supra ("beachhead" analysis is required in *former* officer cases). See generally *United Seal & Rubber Co. v. Bunting*, 248 Ga. 814, 815 (285 SE2d 721) (1982) (former officer case adopting "beachhead" language); *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 378 (2) (297 SE2d 473) (1982) (same).

[20] See *Parks*, supra.

[21] *Mercker v. Abend*, 260 Ga. App. 836, 841 (2) (581 SE2d 351) (2003).

[22] See generally OCGA § 51-12-5.1 (d) (1), (2) (where punitive damages have been pled, a proceeding which bifurcates liability for damages from amount of damages is appropriate).

[23] See *Aldworth Co. v. England*, 286 Ga. App. 1, 2 (648 SE2d 198) (2007).

[24] OCGA § 51-12-5.1 (b).

finds that the defendant acted, or failed to act, with the specific intent to cause harm.[25] The Supreme Court of Georgia in *McDaniel v. Elliott*[26] set forth "a bright line rule requiring a party to request both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm."[27]

Brewer contends that ITI failed: (1) to show that Brewer acted with specific intent to harm, and (2) to request a jury charge on specific intent to harm in its pretrial order. The record reveals, however, that the rule expressed in *McDaniel* had been satisfied. After the jury returned its verdict on liability for punitive damages, ITI requested at a bench conference that "the [punitive damages] cap charges . . . be given to the jury and that the jury make a finding of fact as to specific intent to harm." The trial court gave the charge on specific intent to cause harm, and the jury awarded $650,000 in punitive damages to ITI.

Contrary to Brewer's contentions, the evidence supported the jury's finding of specific intent to harm. An employee who worked for both ITI and FreightCheck testified that Brewer warned her and other employees not to reveal their involvement with FreightCheck because "it would only be a detriment to you." Hull testified that Brewer told him that Aliengena gave Brewer permission to work on a second factoring company. Aliengena testified that he had no knowledge of Brewer's involvement in a second factoring company, and thought Brewer was spending all his work efforts on ITI's factoring division.

Brewer argues nevertheless that ITI cannot avoid the statutory cap because it did not request the charge on specific intent to cause harm in its pretrial order. He cites *Dept. of Human Resources v. Phillips*,[28] which held that "unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order."[29] Brewer has offered no support, however, for the proposition that a proposed jury charge on specific intent to cause harm must be contained in the pretrial order.

Although the trial court included a separate phase on the issue of punitive damages, no evidence was presented during that phase. ITI timely requested the charge on specific intent to cause harm during the punitive damages phase. Because ITI requested both a charge as to specific intent to cause harm and a specific finding

---

[25] OCGA § 51-12-5.1 (f), (g).

[26] 269 Ga. 262 (497 SE2d 786) (1998).

[27] Id. at 265 (3).

[28] 268 Ga. 316 (486 SE2d 851) (1997).

[29] Id. at 318 (1) (footnotes omitted).

thereto, there was no reversible error on this ground.[30]

4. Brewer contends that the trial court erred in refusing to set off a monetary settlement between ITI and Hull, GetLoaded, and FreightCheck ("the joint tortfeasors") against ITI's jury award with respect to attorney fees and punitive damages. The joint tortfeasors entered a Mutual Release with ITI in satisfaction of its claims against them. The release specifically excluded Brewer.

The trial court set off the settlement that ITI received from the joint tortfeasors against the compensatory damages that the jury awarded ITI against Brewer, but declined to set off the settlement against the jury's award of attorney fees and punitive damages. Brewer argues that the jury's entire award of $1.4 million (including compensatory and punitive damages and attorney fees) should be reduced by the entire settlement amount of $1.7 million, which would eliminate his obligation to pay any amount to ITI. We disagree.

We review a claim of error pertaining to the trial court's failure to set off a settlement under the any evidence standard of review.[31] "Once a trial court has entered judgment on a jury's verdict, we will affirm if any evidence supports the verdict so long as no material legal error exists."[32]

Where parties are joint tortfeasors, they are jointly and severally liable for the full amount of the plaintiff's damages.[33] In *Posey v. Medical Center-West*,[34] the Supreme Court of Georgia addressed the question of whether a general release given to one joint tortfeasor released all joint tortfeasors, and adopted the following rule: "[a] valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others for the same harm, unless it is agreed that it will discharge them."[35] The court further explained that where a plaintiff releases one joint tortfeasor he need not release all other joint tortfeasors, if he has not yet received full satisfaction.[36]

A plaintiff is entitled to a full, but single, satisfaction of his total harm.[37] Consequently, where one or more tortfeasors enter a settlement with a plaintiff, a remaining tortfeasor may be entitled to a set

---

[30] See, e.g., *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 187 (6) (558 SE2d 411) (2001) (no error in refusing to cap award of punitive damages where evidence in record supported jury's finding of specific intent to harm).

[31] See *The Kroger Co. v. Mays*, 292 Ga. App. 399 (664 SE2d 812) (2008).

[32] Id. (footnote omitted).

[33] Id. at 401.

[34] 257 Ga. 55 (354 SE2d 417) (1987).

[35] Id. at 59.

[36] Id. at 58.

[37] Id. at 59.

off of payments previously made, to prevent double recovery.[38] Whether the trial court granted a double recovery to ITI when it failed to set off the settlement from the award of punitive damages and attorney fees turns, therefore, on whether the previous settlement with the joint tortfeasors represented a full satisfaction for ITI's total harm on punitive damages and attorney fees, respectively.[39]

(a) We address the punitive damages question first. The jury found that Brewer evidenced specific intent to cause harm to ITI, and awarded punitive damages to ITI in the amount of $650,000. Brewer contends that the settlement agreement with the joint tortfeasors intended to release him from liability for punitive damages. Brewer points to the language in the Mutual Release providing that "demands of any kind or nature whatsoever" be released by the parties to the agreement. The Mutual Release, however, specifically excluded Brewer. The release stated the parties' intention not to release Brewer from "any claims whatsoever . . . that ITI . . . may have against Brewer."[40]

Punitive damages serve a specific purpose: to punish and deter the defendant, not to compensate the victim.[41] Consequently, ITI could not have received full satisfaction of punitive damages owed by Brewer through its settlement with the joint tortfeasors. There was no error in the award of punitive damages.[42]

(b) Attorney fees may be awarded where a defendant has acted in bad faith, been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense.[43] The jury awarded $355,000 in attorney fees to ITI on the ground that Brewer acted in bad faith. Brewer contends that the settlement agreement with the joint tortfeasors intended to release him from liability for attorney fees. We disagree because the Mutual Release specifically released the joint tortfeasors from future claims for attorney fees, but it excluded Brewer.[44]

Moreover, there is no evidence in the record to suggest that ITI

---

[38] *Mays*, supra, 292 Ga. App. at 401; *Cole v. Webb*, 267 Ga. App. 174, 177 (2) (598 SE2d 886) (2004).

[39] *Posey*, supra, 257 Ga. at 58-59.

[40] Compare *Brown & Williamson Tobacco v. Gault*, 280 Ga. 420, 424 (3) (627 SE2d 549) (2006) (settlement agreement that defined settled claims as "liabilities of any nature including civil penalties and punitive damages" evidenced intent to settle punitive damages and barred such a claim).

[41] *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 231 (4) (476 SE2d 565) (1996).

[42] See *Atlantic Coast Line R. Co. v. Ouzts*, 82 Ga. App. 36, 58 (2) (60 SE2d 770) (1950) (the universal principle that the person injured shall receive compensation commensurate with his loss or injury and no more is not intended to apply to punitive damages awards).

[43] See OCGA § 13-6-11.

[44] See *Posey*, supra, 257 Ga. at 58.

received full satisfaction of its attorney fees through the settlement agreement with the joint tortfeasors. The Mutual Release sets forth one sum, $1.7 million, in satisfaction of ITI's total claims against the joint tortfeasors. It does not apportion an amount for attorney fees, nor does it apportion specific amounts of damages to specific tortfeasors. Consequently, Brewer has not shown by the record that the trial court erred when it declined to set off attorney fees from the total award.[45]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 30, 2009 —
RECONSIDERATION DENIED DECEMBER 16, 2009 — 

*L. Matt Wilson*, for appellant.
*Lamberth, Cifelli, Stokes, Ellis & Nason, Gary D. Stokes, Bruce E. Mitchell, Clare Michaud*, for appellee.