A03A0571. BRYANT et al. v. BROWNING et al.
(576 SE2d 925)

ELDRIDGE, Judge.

On June 24, 1996, Robert L. Browning ("Browning") murdered William Roger Bryant. On that date he was arrested and jailed. On July 26, 1996, while incarcerated, Browning transferred by quitclaim deed real property without any consideration to his wife, Barbara Merleen Browning ("Mrs. Browning"), leaving him only $60,000 in assets. Since July 19, 1974, the real property had been exclusively in the name of Browning and has been free of any liens or encumbrances.

Tracie Mays Bryant, widow, individually and as administratrix of the estate of William Roger Bryant, deceased, brought actions for wrongful death and for funeral expenses against Browning and obtained a jury verdict rendered to judgment for $1,100,000. Then, Bryant brought this action to set aside the conveyance and for fraudulent conveyance against Browning and Mrs. Browning. All parties filed cross-motions for summary judgment; on September 16, 2002, the trial court granted the Brownings' motion for summary judgment and denied Bryant's motion for summary judgment. Finding that the trial court erred as a matter of law in failing to consider that the unliquidated claims of Bryant, which arose upon the homicide, may have rendered Browning insolvent at the time of the conveyance to Mrs. Browning, we reverse for jury determination of insolvency at the time of the conveyance.

1. Bryant contends that the trial court erred in failing to consider the claims arising from the killing as rendering Browning insolvent at the time of the conveyance without consideration to Mrs. Browning. We agree.

Tort actions for wrongful death and for funeral expenses arose

immediately at the moment that William Roger Bryant died.[1] By statutory scheme in Georgia, the spouse or nearest relative to the deceased or the administrator, if no one was within the statutory relationship,[2] was immediately vested at the time of death with the wrongful death claim against the tortfeasor causing death.[3] Such wrongful death action constituted an immediate unliquidated claim against Browning, although he did not know who had the right of action, what the full value of the life of the decedent would be, or that someone would sue to collect upon such claim. See OCGA § 18-2-22 (3).[4]

> [I]nsolvency of the debtor is determined by ascertaining whether he retained sufficient assets to satisfy his obligations after the transfer[ ]. [Browning should have been aware that a wrongful death action would probably be filed] against him by which it sought millions of dollars in damages, and he did not retain sufficient assets[, i.e., $60,000,] to satisfy any award against him.

(Citations omitted.) *Rolleston v. Cherry*, 237 Ga. App. 733, 736 (1) (b) (521 SE2d 1) (1999).

> By its specific terms, [OCGA § 18-2-22] applies to "creditors and others." These "others" include plaintiffs with claims

---

[1] The right of action for wrongful death arose at the moment of death. See *Atlantic, Valdosta &c. R. Co. v. McDilda*, 125 Ga. 468, 470 (54 SE 140) (1906) (the statute of limitation commences to run from the time of death when the right of action became vested in a statutory beneficiary); *DeLoach v. Emergency Med. Group*, 155 Ga. App. 866, 867-868 (2) (274 SE2d 38) (1980) (since the right of action is vested in either a statutory designated individual or the administrator for the benefit of the next of kin, then the absence of a legal representative does not toll the statute of limitation from running under OCGA § 9-3-92).

[2] OCGA § 51-4-2 (a) provides the wrongful death action in the surviving spouse and § 51-4-5 provides the wrongful death action in the legal representative if no one comes within the statutory schedule of individuals vested with the wrongful death action so that the action will not fail for lack of anyone entitled to bring it. See *Patellis v. King*, 52 Ga. App. 118 (182 SE 808) (1935) (administrator of deceased's estate brings the action on behalf of the next of kin and not the estate); *Garvin v. Lovett*, 131 Ga. App. 46 (205 SE2d 124) (1974), aff'd, 232 Ga. 747 (208 SE2d 838) (1974) (when there is no one else vested with the right of action for medical and funeral expenses only then is such action vested in the administrator); *Smith v. Mem. Med. Center*, 208 Ga. App. 26, 27 (1) (430 SE2d 57) (1993) (the survival of the action for pain and suffering is vested in the legal representative and is distinct from a wrongful death action).

[3] OCGA § 51-4-1 creates a claim for damages for the full value of the life of the decedent against the tortfeasor based upon either a crime, negligent conduct, or product liability. See *Stiltjes v. Ridco Exterminating Co.*, 256 Ga. 255, 257-259 (1) (347 SE2d 568) (1986); *Western &c. R. Co. v. Michael*, 175 Ga. 1, 14 (165 SE 37) (1932) (full value of the life is not reduced by any living expenses or taxes that the deceased in life would be subject to pay and includes both economic and noneconomic value of the decedent's life).

[4] Repealed by Ga. L. 2002, p. 141, § 2, effective July 1, 2002; OCGA § 18-2-70 et seq.

> against debtors "liable as tortfeasors, or otherwise for an unascertained damage to person or property, so far as fraudulent conveyances are concerned." In 1895, the legislature put back in the statute the words declaring certain acts to be fraudulent in law against creditors "and others."

(Citations, punctuation and emphasis omitted.) Id. at 735; see also *Bonner v. Smith*, 247 Ga. App. 419, 420 (1) (543 SE2d 457) (2000). Thus, whether the unliquidated claim made Browning insolvent at the time of transfer under OCGA § 18-2-22 (3) required no proof of intent to defraud, because the law presumes conclusively a fraudulent intent from such facts and circumstances where there was an indebtedness, insolvency, and no consideration for the voluntary conveyance. See *Barclay v. First Nat. Bank of Polk County*, 265 Ga. 744 (462 SE2d 374) (1995); *Stokes v. McRae*, 247 Ga. 658, 659 (1) (278 SE2d 393) (1981). An issue of fact remains for jury determination, whether in fact the unliquidated wrongful death claim at the time of transfer without consideration to the wife rendered Browning insolvent.

2. Bryant contends that the trial court erred in granting summary judgment under OCGA § 18-2-22 (2), because there existed no material issue of fact as to the intent to defraud creditors. We agree.

The trial court decided this case under OCGA § 18-2-22 (2), requiring proof of the intent to delay or defraud creditors and knowledge on the part of the recipient of the conveyance, because both Browning and Mrs. Browning denied any fraudulent intent or knowledge of any wrongful death claim. The trial court erred in granting summary judgment under such subsection as well. This was a conveyance without consideration from a husband to a spouse giving rise to a refutable presumption of fraud.

> When a creditor attacks a conveyance from a husband to a wife, slight circumstances may be sufficient to establish the existence of fraud. The burden is on the husband and the wife to show that the transaction as a whole was free from fraud. And it is for the jury to say whether the husband and wife carried their burden in this regard.

(Citations omitted.) *Dearing v. A. R. III, Inc.*, 266 Ga. 301, 302 (1) (466 SE2d 565) (1996); see also OCGA § 18-2-22 (2). When a conveyance without consideration to a spouse is made and when there exists a claim, the plaintiff does not have to prove insolvency and may establish knowledge on the part of the recipient by evidence showing actual knowledge or reasonable grounds to suspect that the conveyance was to delay or hinder the creditor. *Dearing v. A. R. III,*

*Inc.*, supra at 302-303 (1), (2). This court on the similar facts and circumstances of a murder held that it was proper for the trial court to deny summary judgment on a fraudulent conveyance where the conveyance had been by the husband, a murderer, to his spouse without consideration. *Bonner v. Smith,* supra at 421.

Browning, a convicted felon, and his wife, who had a direct financial interest in retaining the property, both testified that they had no intent to delay or defraud any creditors and that they were not aware that Bryant might bring a wrongful death action at the time of the voluntary conveyance; their testimony was a matter of credibility for jury determination, since there existed issues of impeachment. See OCGA §§ 24-9-68 (proof of a conflicting financial interest); 24-9-80 (credibility issues for jury determination); 24-9-84 (bad character show by conviction of a felony involving moral turpitude); *Bonner v. Smith,* supra at 421. In this case, the trial court usurped the jury's determination of such critical credibility issues by accepting the defendants' testimony at face value when impeachment issues raised questions about the credibility of their testimony. *McNeely v. Wal-Mart Stores,* 246 Ga. App. 852, 853-854 (542 SE2d 575) (2000).

Further, OCGA § 19-3-10 provides that "when a transaction between a husband and wife is attacked for fraud by the creditors of either, the onus shall be on the husband and wife to show the transaction was fair." *Bonner v. Smith,* supra at 421. Clearly, this is a case for jury determination as to the weight and credibility of the parties' testimony, their intent, and whether actual or constructive fraud has been established by the facts and circumstances of the case. Id. Such unliquidated wrongful death claim had to be considered in determining whether or not Browning was insolvent at the time of the conveyance to his wife without consideration. The trial court's failure to consider such unliquidated claim constituted an error of law requiring reversal.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 5, 2003 — 

*Woodard & Butler, Jeffrey M. Butler, Greer, Klosik, Daugherty & Swank, Robert J. McCune,* for appellants.
*Fowler & Wills, Samuel A. Fowler, Jr.,* for appellees.