A09A1890. ABBOTT OIL COMPANY, INC. v. ROGERS et al.
(691 SE2d 561)

SMITH, Presiding Judge.

Abbott Oil Company, Inc. ("Abbott Oil") appeals from the trial court's order granting summary judgment in favor of Robert William Robertson, Mary Jane Robertson, and Robertson Investments, Inc.[1] In its sole enumeration of error, Abbott Oil contends that the trial court erred by failing to find that a genuine issue of material fact existed with regard to the Robertsons' liability under the Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq. We agree and therefore reverse this portion of the trial court's summary judgment order.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Cox Enterprises. v. Nix*, 274 Ga. 801, 804 (2) (560 SE2d 650) (2002). Viewed in this light, the record shows that Abbott Oil sold gasoline on credit to Savin' Haven, Inc., a convenience store owned jointly by Tom and Vanessa Rogers. In December 2007, Savin' Haven "became seriously in arrears in payment for gasoline." At that time, the Rogerses and representa-

---

[1] Abbott Oil's claim against another defendant, Vanessa Rogers, remains pending below. The trial court denied Rogers's motion for summary judgment in a summary order finding that genuine issues of material fact existed with regard to Abbott Oil's claims against Rogers.

tives of Abbott Oil engaged in negotiations to sell Savin' Haven to Abbott Oil for $1.75 million. This "purchase price was arrived at by adding Savin' Haven's debts due to Georgia Bank & Trust Company, to the Small Business Administration, and to Abbott Oil." Savin' Haven owed Abbott Oil $244,897.94. Abbott Oil made its last delivery of gasoline on December 31, 2007 and refused to deliver any more gasoline to Savin' Haven on credit as of January 4, 2008. Savin' Haven closed for business sometime in January 2008.

According to the president of Abbott Oil, Vanessa Rogers orally agreed to sell Savin' Haven to Abbott Oil for $1.75 million in January 2008. On January 25, 2008, however, the Rogerses signed a written contract in which they agreed to sell the land on which the store was located and all of its fixtures to Robert and Mary Jane Robertson for $1.75 million.

The record shows that the Robertsons and the Rogerses were "really close" friends who had known one another for almost ten years. When Tom Rogers was "in treatment" for drug addiction, Mary Jane Robertson helped him with the bookkeeping for another business he owned, and both of the Robertsons helped make day-to-day business decisions for the business during this time. Both went to the hospital when Tom Rogers was in the intensive care unit. At one point in his deposition testimony, Robert Robertson explained that he was "ready for [Tom Rogers] to do his own — own thing. I've tried to — he's pushed the friendship — you know, you want to help a person that's down and out, I reckon, and help them get back going but it's time for him to step up and run it," meaning the other business owned by Tom Rogers.

Another potential purchaser of Savin' Haven submitted an affidavit in which he averred that he spoke with Robert Robertson before the Robertsons purchased the store, that he told him that Savin' Haven owed Abbott Oil several hundred thousand dollars for gasoline, that he told him to "be careful because of the outstanding debt," and that Robert "Robertson acknowledged his awareness of the outstanding debt owed to Abbott Oil." In his deposition, Robert Robertson admitted that he did not discuss the debts of Savin' Haven with the Rogerses' accountant. Tom Rogers testified that he never discussed the debts and obligations of Savin' Haven with the Robertsons.

Mary Jane Robertson acknowledged in her deposition that she knew Savin' Haven had a lot of debt to pay off with the sale price and that Abbot Oil was Savin' Haven's gas supplier. She admitted that Vanessa Rogers told her that she had to have $1.75 million to pay off debt. She further testified that "[i]t wasn't my business to — to find out who."

On March 4, 2008, the Rogerses learned that Abbott Oil had filed

suit against Savin' Haven and Tom Rogers for a principal sum of $244,897.94. On April 7, 2008, the Robertsons and Robertson Investments, Inc. purchased "all property belonging to the business known as Savin' Haven," except "the office furniture, and the fuel in the tanks." The Rogerses warranted in the written sale agreement "that all creditors of the Seller and business have been paid in full" and that "there are no outstanding accounts due as of the date of closing." They also stated that "there are no legal . . . proceedings . . . pending or threatened against or otherwise affecting the business which affects in any way this transaction." Finally, the agreement provided that "Seller has shown proof to Buyer that all accounts due prior to the closing date have been paid and further that Buyer has worked in the business and is aware of the business operation and understands the nature and status of the business." Vanessa Rogers acknowledged that she knew about Abbott Oil's lawsuit against Savin' Haven before the closing with the Robertsons.

The Rogerses received a $243,000 check made payable to them individually at the closing, and both of the Robertsons were aware that they received this check at the closing. The check was deposited into a Savin' Haven business account, and Tom Rogers wrote a check for a little over $156,000 to Vanessa Rogers's business from the company account and distributed the rest of the closing proceeds to himself. On April 21, 2008, Abbott Oil obtained a money judgment totaling $287,499.98 against Savin' Haven and Tom Rogers.

In June 2008, Abbott Oil filed suit against Vanessa Rogers, the Robertsons, and Robertson Investments, Inc. The complaint alleged the following causes of action against the Robertsons and Robertson Investments: assertion of a lien against the sale assets under the bulk sales law; avoidance of the sale because it "was a fraud on a creditor"; and contractual responsibility of the defendants for the liabilities of Savin' Haven under the sale agreement.

The Robertsons and Robertson Investments moved for summary judgment on the grounds that they had no liability under the Bulk Transfers law and that a cause of action for fraud could not be brought against them under the Bulk Transfer Act. See OCGA § 11-6-101 et seq.; *Tate v. Kia Autosport of Stone Mountain*, 273 Ga. App. 627, 628 (616 SE2d 112) (2005). Abbott Oil opposed the motion by arguing that the Robertsons and Roberston Investments were liable under the Uniform Fraudulent Transfers Act. The trial judge granted summary judgment to the Robertsons and Robertson Investments without a detailed explanation of her reasoning.

On appeal, Abbott Oil argues only that the trial court erred by granting summary judgment in favor of the Robertsons and Robertson Investments on its claim under the Uniform Fraudulent Transfers Act. We therefore affirm the trial court's grant of summary

judgment to these defendants on Abbott Oil's other claims.

The Uniform Fraudulent Transfers Act provides that "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." OCGA § 18-2-74 (a) (1). In this case, the record amply demonstrates a genuine issue of material fact as to whether the Rogerses and Savin' Haven transferred their assets with actual intent to hinder, delay, or defraud Abbott Oil.

OCGA § 18-2-77 (a) (1) authorizes a creditor to seek "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim." A creditor cannot, however, seek to void a transfer "against a person who took in good faith and for a reasonably equivalent value. . . ." OCGA § 18-2-78 (a). The outcome of this case, therefore, turns on whether genuine issues of fact exist as to whether the Robertsons and Robertson Investments purchased property belonging to Savin' Haven in good faith.[2]

We find that such issues exist. The record shows that the Robertsons and Rogerses were close friends for almost ten years, that the Robertsons knew that Tom Rogers had a drug problem, and that Robert Robertson knew that these problems "had done about broke" Vanessa Rogers. Mary Jane Robertson knew the entire sale price was needed to pay off debt, but did not inquire about to whom money was owed. The record also shows that Robert Robertson learned before the sale that Abbott Oil had a claim for several hundred thousand dollars, but did nothing to investigate the status of this debt before finalizing the purchase.

The combination of these facts and circumstances creates a genuine issue of fact as to whether the Robertsons and Robertson Investments purchased the property of Savin' Haven in good faith. See generally *Word v. Stidham*, 271 Ga. App. 435, 436-437 (609 SE2d 651) (2004) (reversing trial court's grant of summary judgment because genuine issue of fact existed as to whether party violated Uniform Fraudulent Transfers Act). For this reason, we must reverse the trial court's grant of complete summary judgment to these defendants because they were not entitled to summary judgment in their favor on Abbott Oil's claim under the Uniform Fraudulent Transfers Act.

*Judgment affirmed in part and reversed in part. Phipps and Bernes, JJ., concur.*

---

[2] Abbott Oil does not contend that the sale price was not "for a reasonably equivalent value" under OCGA § 18-2-78 (a).

*Bell & Bell, David B. Bell, Sharon B. Enoch*, for appellant.
*Capers, Dunbar, Sanders & Bruckner, Emory F. Sanders, Sr., Ziva P. Bruckner, Tucker, Everitt, Long, Brewton & Lanier, John B. Long*, for appellees.