**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 21, 2016**

# In the Court of Appeals of Georgia

A16A0066. BLOOM v. CAMP.

ELLINGTON, Presiding Judge.

David Camp brought this action in the Superior Court of Cobb County against Stephen Bloom and the estate of David Wood. As to the estate of David Wood, Camp sought, inter alia, to recover $104,800, the balance due Camp under a promissory note executed by Wood. As to Bloom, Camp sought damages under theories of fraudulent transfer, civil conspiracy, and unjust enrichment, all arising from a warranty deed whereby Wood, as grantor, conveyed property to himself and to Bloom as joint tenants with right of survivorship, allegedly to shield the property from creditors, including Camp.

When the case was called for trial, the representative of Wood's estate did not participate in the jury trial or present any defense. At the close of the evidence, the

trial court granted Camp's motion for a directed verdict against Wood's estate for $104,800 due under the promissory note, plus 10 percent of that amount in attorney fees as provided in that note and authorized by a statute regarding the collection of promissory notes.[1] Bloom also moved for a directed verdict, but the trial court denied his motion and submitted Camp's claims against him to the jury, including Camp's demand for actual attorney fees if the jury found that Bloom acted in bad faith, was stubbornly litigious, or caused unnecessary trouble or expense.[2] The jury returned a general verdict in Camp's favor for $104,800, plus attorney fees of $27,750. In the

---

[1] In the written promissory note at issue, Wood agreed "to the extent not prohibited by applicable law[,]" to pay Camp for all of his costs and expenses in enforcing the note including his "reasonable attorneys' fees." See OCGA § 13-1-11 (A contractual obligation to pay attorney fees in connection with the collection of a promissory note "shall be valid and enforceable and collectable as a part of such debt if the note is collected by or through an attorney after maturity[.]" If the note provides for "reasonable" attorney fees without specifying any specific fraction, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note . . . and 10 percent of the amount of principal and interest owing thereon in excess of $500.00."); John K. Larkins, Jr., *Ga. Contracts: Law and Litigation*, § 12:31 (2d ed., updated September 2015); Lewis N. Jones, *Ga. Legal Collections*, § 3:20 (2d ed., updated June 2015).

[2] See OCGA § 13-6-11 ("[W]here the plaintiff has specially pleaded and has made prayer [for the expenses of litigation] and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow" the expenses of litigation as a part of an award of damages.).

final judgment on the directed verdict and the jury verdict, the court entered judgment in the amount of $104,800 against Wood's estate and Bloom jointly, against the estate for attorney fees of $10,480, and against Bloom individually for attorney fees of $27,750.

Bloom appeals, contending that the evidence was insufficient to authorize a verdict against him under any of Camp's theories of recovery. Bloom contends that Camp's claim for actual attorney fees and expenses of litigation under OCGA § 13-6-11 was not supported by any evidence that he acted in bad faith, was stubbornly litigious, or caused unnecessary trouble or expense and that the trial court erred in not having the jury apportion any such award between him and Wood's estate. He also contends that the award of attorney fees under OCGA § 13-1-11 in connection with the collection of the promissory note and under OCGA § 13-6-11 as part of his damages constitutes an impermissible double recovery. For the reasons explained below, we affirm.

1. Bloom contends that the evidence was insufficient to sustain the jury's verdict under Camp's theory of fraudulent transfer and civil conspiracy. The "any evidence" standard of review applies to this argument, that is, we must affirm if there is any evidence to support the jury's verdict, and in making this determination, we

3

must construe the evidence in the light most favorable to Camp as the prevailing party. *Aldworth Co., Inc. v. England*, 281 Ga. 197, 201 (637 SE2d 198) (2006); *Yi v. Li*, 313 Ga. App. 273, 274 (721 SE2d 144) (2011).

> In construing a verdict, we look to the pleadings, the issues made by the evidence, and the charge. This Court must view all of the evidence and every presumption arising therefrom most favorably toward upholding the jury's verdict. It is well settled that a strong presumption exists in favor of the validity of jury verdicts. Verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity. And, if possible, a construction will be given which will uphold them. There is also a presumption that the verdict of a jury is based on a fair consideration of all matters presented to it.

(Citations and punctuation omitted.) *Davis v. Johnson*, 280 Ga. App. 318, 321 (634 SE2d 108) (2006).

Construed in the light most favorable to Camp as the prevailing party, the record shows the following. In 2006, Camp, a home builder, embarked on a business venture with his longtime friend and sometime business partner, Crawford Wood, to develop a residential lot Crawford owned at 102 Hope Street, NW, Marietta. Crawford conveyed the lot to Camp and lent him most of the necessary money. In

4

return, Camp gave him a promissory note for $300,000 and a deed to secure debt. Crawford died in April 2007, before Camp finished building the house.

Camp was not able to satisfy the secured promissory note then held by Crawford's estate when it came due in April 2009. Over the next few months, Camp negotiated a resolution with Crawford's adult children (David Wood, Sandra Wood, and Carole Breitenbach). They agreed to the following interrelated transactions: Sandra Wood, as executor of Crawford's estate, conveyed 102 Hope Street to Camp, via quitclaim deed, which released the estate's security interest in the property for Camp's $300,000 debt to the estate; Camp then conveyed the property to David Wood on February 18, 2010; and Wood executed a promissory note, also dated February 18, 2010, in favor of Camp in the amount of $130,000. The promissory note provided that Wood would make monthly payments of $700 for three years and a final balloon payment would be due in February 2013. Wood told Camp that he intended to pay off the note much sooner than that, either by borrowing against 102 Hope Street or by selling other property that he owned. At Wood's request, Camp agreed that the promissory note would not be secured by 102 Hope Street, to facilitate Wood's plan to obtain financing. Bloom was present during some of these discussions and during the execution of the documents.

5

On that same date, February 18, 2010, immediately after Camp conveyed 102 Hope Street to David Wood and Wood executed the promissory note, Wood executed a warranty deed conveying the property to himself and to Bloom, to whom he was married under California law, as joint tenants with right of survivorship. At the time, Wood was preparing to travel to India for treatment of a brain tumor; he died from his illness within a year, on February 1, 2011. As the surviving joint tenant, Bloom became the sole owner of 102 Hope Street. He was also the executor of Wood's will. Bloom did not at that time initiate proceedings to probate the will, however, on the basis that at his death Wood held all of his significant assets as a joint tenant with Bloom, with right of survivorship; little was left to distribute as directed in Wood's will. Bloom refused Camp's demand in March 2013 to pay $104,800 as the balance due him on the February 2010 promissory note, and Camp filed suit in July 2013. In June 2014, Bloom sold 102 Hope Street for $385,000.

As noted above, Camp alleged that, when David Wood was gravely ill, he conveyed 102 Hope Street to himself and to Bloom as joint tenants with right of survivorship in order to shield the property from his creditors in the event of his

6

death. Pursuant to the Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq.,[3]

a transfer of real (or personal) property is voidable as to a creditor if the debtor made

the transfer with the intention of delaying or defrauding any creditor of the debtor or,

under specified circumstances, if the debtor did not receive in exchange for the

transferred property reasonably equivalent value.[4] In determining whether transfer

---

[3] Effective July 1, 2015, the Act has been renamed the "Uniform Voidable Transactions Act." Ga. Laws 2015, Act 167, § 4A-1.

[4]     A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

OCGA § 18-2-74 (a) (2010). See also OCGA §§ 18-2-71 (10) ("'Property' means anything that may be the subject of ownership."); 18-2-74 (b) (2010) (factors to be used to determine whether debtor actually intended to hinder, delay, or defraud any

7

was made with the actual intent to hinder, delay, or defraud a debtor's creditors, "consideration is given to an open-ended set of factors listed in OCGA § 18-2-74 [(b)], which are also commonly called the 'badges of fraud.'" (Citation and punctuation omitted.) *RES-GA Hightower, LLC v. Golshani*, 334 Ga. App. 176, 178 (1) (a) (778 SE2d 805) (2015). The badges of fraud may include evidence that the transfer was to an insider; the debtor retained possession or control of the property transferred after the transfer; the transfer or obligation was concealed; the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred; and the transfer occurred shortly before or shortly after a substantial debt was incurred. OCGA § 18-2-74 (b) (1), (2), (3), (8), (10). "A creditor who can show a fraudulent conveyance has numerous remedies under the Act including but not limited to avoidance of the transfer and attachment of the asset transferred." (Footnote omitted.) Daniel F. Hinkel, 2 Pindar's Ga. Real Estate Law & Procedure, § 19:102 (7th ed., updated April 2015).[5]

_____

creditor); 18-2-75 (2010) (application of OCGA § 18-2-74 (a) (2), transfer voidable if made without receiving reasonably equivalent value); 18-2-76 (2010) (determining when a transfer is made); 18-2-78 (2010) (conditions for voidability of transfer).

[5] See OCGA §§ 18-2-77 (2010) (forms of relief a creditor may obtain when a transfer is avoidable in an action by a creditor, subject to specified limitations, include "[a]ny other relief the circumstances may require"); 18-2-78 (2010)

Viewed in the light most favorable to the jury's verdict, we conclude that some evidence authorized the jury to find Bloom liable for conspiring in a fraudulent transfer, specifically the February 2010 deed conveying David Wood's sole interest in 102 Hope Street to himself and Bloom as joint tenants with right of survivorship. It is undisputed that Wood received no financial consideration for the transfer. The effect of the transfer was that, if he died from his illness (or otherwise) before paying off the promissory note to Camp, as indeed happened, the transfer would leave Bloom as the survivor with sole ownership and Wood's primary asset in Georgia would be out of Camp's reach as a creditor with a claim against his estate. If, on the other hand, he had not died before the balloon payment came due, and Camp had obtained a judgment against him for the debt, any levy on the judgment against the property would have garnered an interest only in Wood's share in the joint tenancy with Bloom, equal to but not superior to Bloom's interest. See OCGA §§ 9-13-10; 9-13-60; *Glover v. Ware*, 236 Ga. App. 40, 41-43 (1) (510 SE2d 895) (1999). In light of evidence which includes Wood's request that Camp accept his word as his bond, rather than requiring security for the debt, and his promise to satisfy the debt quickly, the timing of the conveyance (immediately after Wood acquired title to the property (limitations on available relief).

9

and incurred the debt to Camp), his serious illness at the time of the transfer, and his conveyance to his spouse (at least under California law[6]), we conclude that the jury could infer that the transfer at issue was made with the actual intent to hinder, delay, or defraud Camp, as Wood's creditor. See *Abbott Oil Co. v. Rogers*, 302 Ga. App. 439, 442 (691 SE2d 561) (2010).

As to Bloom's involvement in Wood's alleged fraudulent transfer, it is not surprising that Camp has not identified any *direct* evidence that Bloom conspired with Wood to hinder, delay, or defraud Camp.[7] But we cannot say that there is a

[6] We cannot accept Bloom's argument that, because the State of Georgia did not recognize same-sex marriage at the time, he was not an "insider" under the Act. See OCGA § 19-3-3.1 (2009) ("It is declared to be the public policy of this state to recognize the union only of man and woman. Marriages between persons of the same sex are prohibited in this state. . . . No marriage between persons of the same sex shall be recognized as entitled to the benefits of marriage. Any marriage entered into by persons of the same sex pursuant to a marriage license issued by another state or foreign jurisdiction or otherwise shall be void in this state."). But the term "insider" is not limited to legally married persons. See OCGA § 18-2-71. It is undisputed that Wood and Bloom each regarded the other as his spouse and took steps to care and provide for each other, including by holding all of their significant assets as joint tenants with right of survivorship. In addition, Wood and Bloom acted as partners in renting other property that they co-owned.

[7] As we have observed, "[s]ince fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. Proof of fraud is seldom ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required." (Citation, punctuation, and emphasis omitted.) *Quill v. Newberry*, 238 Ga. App. 184, 189 (1) (b) (518 SE2d 189) (1999). See OCGA § 23-2-57 ("Fraud may not

complete absence of evidence from which the jury could have so inferred, given the closeness of their relationship and their past joint handling of their financial affairs. See *Quill v. Newberry*, 238 Ga. App. at 189 (1) (b) ("[I]t is peculiarly the province of the jury to pass on . . . circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination.") (citation and punctuation omitted).[8] Given the use of a general verdict form, which

be presumed but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence.").

[8] See former OCGA § 18-2-22 (The following acts by debtors, inter alia, deemed fraudulent and therefore null and void: any conveyance "made with intention to delay or defraud creditors, where such intention is known to the taking party" and any conveyance, "not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance"); OCGA § 19-3-10 ("A married person may make contracts with other persons; but, when a transaction between a husband and wife is attacked for fraud by the creditors of either, the onus shall be on the husband and wife to show that the transaction was fair. If a husband or a wife has a separate estate and purchases property from persons other than his or her spouse, the onus shall be upon a creditor levying on such property as the property of the other spouse to show fraud or to show that the husband or wife did not have the means with which to purchase the property."); see also *Bryant v. Browning*, 259 Ga. App. 467, 469-470 (2) (576 SE2d 925) (2003) (When a spouse makes a conveyance to the other spouse without receiving consideration and when there exists a claim against the grantor, the creditor may establish that the grantee had knowledge of the grantor's intent to delay or hinder the creditor by showing that the grantee had reasonable grounds to suspect that grantor made the conveyance with such intent.) (applying OCGA § 19-3-10 and former OCGA § 18-2-22); *Bonner v. Smith*, 247 Ga. App. 419, 419-421 (1) (543 SE2d 457) (2000) (When a creditor attacks a conveyance from a husband to a wife, slight circumstances may be sufficient to show that the conveyance was made with

11

does not disclose the jury's underlying factual findings, and the sufficiency of the evidence under Camp's claim of fraudulent transfer under OCGA § 18-2-74 (a) (1), we need not consider whether the evidence was also sufficient under Camp's alternative theory under OCGA § 18-2-74 (a) (2), which involves issues of the debtor's solvency. See *Borenstein v. Blumenfeld*, 250 Ga. 606, 608 (1) (299 SE2d 727) (1983); Robin C. Larner, 5 Ga. Procedure, Verdict and Judgments, § 5:25 (updated December 2015).

2. Bloom contends that there is no evidence to support Camp's alternative theory of recovery, his equitable claim of unjust enrichment.[9] Because the evidence

intention to delay or defraud creditors, where such intention is known to the taking spouse.) (applying OCGA § 19-3-10 and former OCGA § 18-2-22); *Hadlock v. Anderson*, 246 Ga. App. 291, 292-294 (1) (540 SE2d 282) (2000) (Generally, the question of a grantee spouse's knowledge of fraudulent intent is for the jury, and such intent may be established by proof of circumstances sufficient to put the grantee on inquiry. Inadequacy of the price paid by the grantee, taken in connection with other circumstances of a suspicious nature, "raises a vehement presumption of fraud.") (applying OCGA § 19-3-10 and former OCGA § 18-2-22); *Johnson v. Sheridan*, 179 Ga. App. 331, 333 (1) (346 SE2d 109) (1986) (In cases involving a conveyance between spouses not for valuable consideration, "questions as to the fairness of the transaction, the grantee's notice or ground for reasonable suspicion of the grantor's intention to delay or defraud creditors, and the solvency of the grantor at the time of the conveyance are usually for jury resolution.") (citations omitted) (applying OCGA § 19-3-10 and former OCGA § 18-2-22).

[9] See *Marvin Hewatt Enterprises, Inc. v. Butler Capital Corp.*, 328 Ga. App. 317, 322 (4) (761 SE2d 857) (2014) ("The theory of unjust enrichment is basically

12

was sufficient under Camp's claim of fraudulent transfer under OCGA § 18-2-74 (a) (1), see Division 1, supra, this issue is moot.

3. Bloom contends that Camp's claim for actual attorney fees and expenses of litigation was not supported by any evidence that he acted in bad faith, was stubbornly litigious, or caused unnecessary trouble or expense.

> With regard to litigation expenses under OCGA § 13-6-11, an award of fees and expenses must be affirmed if there is any evidence to support it. Every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees. Because the jury was authorized to find fraud, it was also authorized to find bad faith.

(Citations and punctuation omitted.) *St. Paul Fire & Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 24 (5) (a) (566 SE2d 2) (2002). Again, because the use of a general

---

an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay. The doctrine applies when, as a matter of fact, there is no legal contract" between the party conferring a financial benefit and the party receiving the benefit.) (citations and punctuation omitted); *Reidling v. Holcomb*, 225 Ga. App. 229, 232 (2) (483 SE2d 624) (1997) ("The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred.").

verdict form does not disclose the jury's underlying factual findings, and because the evidence was sufficient under Camp's claim of fraudulent transfer under OCGA § 18-2-74 (a) (1), see Division 1, supra, the evidence was sufficient for the jury to find bad faith.

4. Bloom contends that the award of attorney fees under both OCGA § 13-1-11, in connection with the promissory note, and OCGA § 13-6-11, for bad faith, stubborn litigiousness, or causing unnecessary trouble and expense, constitutes an impermissible double recovery. He also contends that the trial court erred in not having the jury apportion any such award between him and Wood's estate. Whether there is a double recovery turns on whether one avenue of recovery represents a full satisfaction for a particular injury. *Brewer v. Insight Technology, Inc.*, 301 Ga. App. 694, 700-701 (4) (689 SE2d 330) (2009).

As noted above, the trial court granted Camp's motion for a directed verdict against Wood's estate on his claim that Wood breached the promissory note contract. In addition to the balance due under the contract, the court awarded the costs of collection of the note according to the statutory formula set out in OCGA § 13-1-11. As the trial moved forward, Camp abandoned his remaining claims against Wood's estate, and the jury received Camp's claims for fraudulent transfer, conspiracy, and

14

unjust enrichment against Bloom only. Thus, the bases for the findings of liability are separate and distinct: Wood's contractual liability under the promissory note and Bloom's tort liability or equitable obligation. They were not designated to be joint tortfeasors. See *Brown v. Moseley*, 175 Ga. App. 282, 284 (2) (333 SE2d 162) (1985) ("[J]oint tortfeasors contribute to a single injury for which there is but one cause of action, and[,] . . . once the damage has been paid in full by one joint tortfeasor, the injured party has no right to seek an additional or double recovery from another.") (citation and punctuation omitted). There would be no basis for apportioning the jury's award for attorney fees under OCGA § 13-6-11, based on bad faith, stubborn litigiousness, or causing unnecessary trouble and expense, between Bloom and Wood's estate, when there was no verdict holding Wood liable on the claims associated with Camp's demand for attorney fees under OCGA § 13-6-11. Put another way, the judge's award of attorney fees against Wood's estate for the collection of the note according to the OCGA § 13-1-11 formula is a separate and distinct basis for the award of fees from the jury's verdict for attorney fees against Bloom under OCGA § 13-6-11, based on bad faith, stubborn litigiousness, or causing unnecessary trouble and expense. Bloom's argument that the judgment for attorney fees constituted an impermissible double recovery lacks merit. *Foxchase, LLLP v. Cliatt*, 254 Ga. App.

15

239, 241-242 (5) (562 SE2d 221) (2002); cf. *Roofers Edge, Inc. v. Standard Bldg. Co.*, 295 Ga. App. 294, 296 (2) (671 SE2d 310) (2008) (recovery of attorney fees under both OCGA §§ 13-6-11 and 9-15-14, against a single defendant, would constitute an impermissible double recovery for a single injury).

*Judgment affirmed. Branch and Mercier, JJ., concur*.

16