**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 21, 2016**

# In the Court of Appeals of Georgia

A16A1470. DAVISON v. CITIZENS BANK & TRUST
       COMPANY.

DILLARD, Judge.

Citizens Bank & Trust Company ("Citizens Bank") filed suit against Stephen
Davison, Robert Fricks, and HOCO Cubs, LLC ("HOCO"), alleging that HOCO
defaulted on a promissory note and that Davison and Fricks were personally liable
based on a written guaranty. Following a bench trial, the court dismissed HOCO,
found that Fricks was not personally liable, but concluded that Davison was
personally liable, under OCGA § 11-3-403, as an unauthorized signer on the note,
because Citizens Bank, in good faith, took the note for value. On appeal, Davison
contends that the trial court erred in finding that he was liable on the note under

OCGA § 11-3-403. For the reasons set forth *infra*, we reverse the trial court's judgment.

At the outset, we note that on appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[1] Furthermore, in a bench trial, the judge sits as trier of fact, and "the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them."[2] We review any questions of law decided by the trial court, however, *de novo*.[3]

So viewed, the record shows that in 2009, Davison and Fricks were co-owners of Zoegetics International, LLC, with each owning 25 percent of the company and two other individuals splitting the remaining 50 percent. In addition to handling most of Zoegetics's financial matters, Fricks also separately and solely owned HOCO, which listed property containing a small youth baseball field as its sole asset. Davison, however, had no involvement with HOCO in any capacity.

---

[1] *Brock Built, LLC v. Blake*, 316 Ga. App. 710, 712 (730 SE2d 180) (2012) (punctuation omitted).

[2] *Id.* (punctuation omitted).

[3] *Washington v. Harrison*, 299 Ga. App. 335, 336 (682 SE2d 679) (2009).

In June 2009, Davison and Fricks met with Mac Hardin, the president of Citizens Bank in Warner Robins, to discuss obtaining a loan for Zoegetics. During that initial meeting, Davison, Fricks, and Hardin discussed whether Fricks had property that could serve as sufficient collateral for the loan. And because he did not want to be personally liable on the loan, Davison emphasized that he would not sign a promissory note unless there was sufficient collateral to secure it. The issue was not resolved at that point, and Davison left the meeting without signing any documents. Nevertheless, a few days later, $300,000 was deposited into Zoegetics's account, and thus, Davison assumed that Fricks and Hardin had successfully negotiated a loan with sufficient collateral.

In September 2009, Hardin contacted Davison to discuss renewing the June loan, and as part of that process, Davison and Fricks paid $12,500 each to reduce the overall debt. Thereafter, on September 24, 2009, Davison went to Citizens Bank, met briefly with Hardin's assistant, and signed several documents, which he admittedly did not read but assumed were the renewal note and personal guaranty. That same month, Fricks also signed a personal guaranty of the September renewal note but not the note itself. At some point, Fricks also signed a security deed that provided Citizens Bank with the property owned by HOCO as collateral for the renewal note,

3

but for reasons unclear from the record, Citizens Bank did not record that deed until July 2010.

Several months later, after the September 2009 renewal note went into default, Hardin, on behalf of Citizens Bank, began contacting Davison to discuss collection on the debt. And in an attempt to understand the exact nature of his debt obligations, Davison went to Citizens Bank, confronted Hardin, and demanded to see all the loan documents. Hardin complied, and upon reviewing the June 24, 2009 promissory note, Davison observed that HOCO—a company with which he was not familiar—was indicated as the borrower and that his name and title as a member of HOCO were printed below the signature line. Additionally, Davison determined that his signature had been forged on both the June note and the guaranty of that note. Davison also reviewed the September 24, 2009 renewal note and guaranty, which he had actually signed, and now noticed that it similarly indicated HOCO as the borrower and that he was signing as a member of that company.

Immediately thereafter, Davison reported the forgeries on the June 2009 loan documents to law enforcement and the local district attorney. Law enforcement and the FDIC ultimately opened investigations into Hardin's banking practices and eventually charged him with offenses related to many of the loans he originated. But

these authorities never definitively determined that Hardin forged Davison's signature on the June 2009 note and guaranty, and none of the charges filed against him pertained to that loan. Subsequently, Citizens Bank terminated Hardin's employment, but it also continued efforts to collect the HOCO debt from Davison.

On September 9, 2011, Citizens Bank filed a lawsuit against Davison and HOCO, seeking $363,718, interest, and attorney fees for non-payment of the June 2009 promissory note and guaranty and September 2009 renewal note and guaranty. Shortly after Davison filed his answer, Citizens Bank successfully moved to add Fricks as a defendant, and Fricks filed an answer as well. The case proceeded to a bench trial, during which Davison, Fricks, and a vice-president of Citizens Bank testified. After the trial's conclusion, the court dismissed HOCO based on the undisputed evidence that Citizens Bank never even attempted to serve the company. Additionally, the court directed the parties to file briefs on the issue of whether Davison and Fricks were personally liable for the debt in light of HOCO's dismissal, and it took the matter under advisement pending its review of those briefs.

The parties then filed post-trial briefs as directed by the trial court. And in its rebuttal brief, Citizens Bank argued for the first time that even if the June 2009 promissory note and guaranty were unenforceable because Davison's signature was

a forgery, Davison was nevertheless liable for the September 2009 renewal note as an unauthorized signer under OCGA § 11-3-403. Davison contested this argument in a further reply. Nevertheless, on November 6, 2015, the trial court issued an order of judgment finding that Fricks was not personally liable for any of the debt but that Davison was liable for the full amount of the debt, plus interest and attorney fees, based on his signing of the September 2009 renewal note. Specifically, the trial court found that Davison's signature on the June 2009 note and guaranty was indeed a forgery and, therefore, that note and guaranty were unenforceable. However, because Citizens Bank did, in fact, loan $300,000 to HOCO, which Fricks immediately transferred to Zoegetics's account, Citizens Bank had an unspecified "*quasi ex contractu*" claim. It then found that Davison was liable on the September 2009 renewal note as an unauthorized signer, under OCGA § 11-3-403 (a), and that Citizens Bank took the note in good faith and for value. The court further reasoned that Citizen Bank's *quasi ex contractu* claim constituted the consideration for the renewal note, which otherwise would have been lacking given that it was the renewal of the unenforceable June 2009 note. Finally, the trial court found that neither Davison nor Fricks were liable under the September 2009 guaranty because Citizens

6

Bank failed to proffer the original or a copy of the guaranty into evidence. This appeal follows.

In three separate enumerations of error, Davison contends that the trial court erred in ruling that he was liable on the September 2009 note under OCGA § 11-3-403 (a). Specifically, he argues that the court erred in finding that he was an unauthorized signer on the note, that Citizens Bank took the note in good faith, and that it took the note for value. But pretermitting whether Davison was an unauthorized signer and whether the September 2009 note was taken for value, the trial court erred in finding that Citizens Bank took the note in good faith, and thus, we reverse its judgment.

OCGA § 11-3-403 (a) provides that "[u]nless otherwise provided in this article or Article 4 of this title, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this article." And although this section of Georgia's Uniform Commercial Code is most commonly applied to instances involving forged checks,[4] as noted in the

---

[4] *See, e.g., Gerber & Gerber, P.C. v. Regions Bank*, 266 Ga. App. 8, 10 (2) (596 SE2d 174) (2004) (noting that because payee's signatures on check were forgeries, they were ineffective as endorsements by payee under OCGA § 11-3-403 (a)).

7

UCC official comments[5] accompanying OCGA § 11-3-403, an "'[u]nauthorized' signature is defined in Section 1-201 (43) as one that includes a forgery as well as a signature made by one exceeding actual or apparent authority.'"[6] Consequently, as Citizens Bank argued below and on appeal, the Code section may also apply to one such as Davison, who signed his own signature but without authority to do so on behalf of HOCO.

Turning to the manner in which OCGA § 11-3-403 (a) imposes liability, the comments provide that

> [t]he clause of the first sentence of subsection (a) states the generally accepted rule that the unauthorized signature, while it is wholly inoperative as that of the person whose name is signed, is effective to impose liability upon the signer or to transfer any rights that the signer may have in the instrument. The signer's liability is not in damages for

---

[5] This Court has held that "[i]n order to determine the meaning and purpose behind the enactment of a Georgia Commercial Code provision that is taken verbatim from the UCC, we turn to the UCC Official Comments for assistance." *Metzger v. Americredit Fin. Servs.*, 273 Ga. App. 453, 457 n.3 (615 SE2d 120) (2005); *accord Coleman v. DaimlerChrysler Servs. of N. Am.*, 276 Ga. App. 336, 339 n.3 (623 SE2d 189) (2005).

[6] OCGA § 11-3-403, Official Comment 1.

breach of warranty of authority, but is full liability on the instrument in the capacity in which the signer signed.[7]

But importantly, the last sentence of the same comment also provides that the signer's liability "is, however, limited to parties who take or pay the instrument in good faith; and one who knows that the signature is unauthorized cannot recover from the signer on the instrument."[8]

Here, Davison undisputedly testified that he has never been a member of HOCO and, in fact, has never been affiliated with that company in any capacity. Furthermore, Fricks testified that he was the sole shareholder of HOCO and that Davison never had any role in the company. But more importantly, Citizens Bank had information in its possession confirming that Fricks was the *sole owner* of HOCO and that Davison had no involvement with the company. Indeed, during the bench trial, Citizens Bank's vice president provided the following testimony on cross-examination:

Q. Okay. The Bank—if the Bank is making a loan to an entity such as a corporation or a limited liability company, does the bank normally

---

[7] OCGA § 11-3-403, Official Comment 2.

[8] *Id.*

9

require documents in its file to verify who can sign on behalf of the company?

A. We would.

Q. And so in this case with the loan being made to HOCO Cubs, LLC, the Bank has obtained an operating agreement from HOCO Cubs, LLC; is that correct?

A. That is correct.

Q. And that's in the Bank's file?

A. That's correct.

Q. And according to the operating agreement of HOCO Cubs, LLC, Rob Fricks is the sole member manager; is that correct?

A. From what I can find, correct.

Q. Is there anything in the Bank's file that would say that Steve Davison had any authority to sign for HOCO Cubs, LLC?

A. Nothing presented and executed.

Given this undisputed testimony from Davison, Fricks, and Citizens Bank's own vice-president, Citizens Bank knew that Davison was not authorized to sign a promissory

10

note on behalf of HOCO and, therefore, cannot recover the debt from Davison in this regard.[9] Thus, the trial court erred in finding that Citizens Bank took the note in good faith and in ruling that Davison was liable for the debt under OCGA § 11-3-403 (a). Accordingly, we reverse that ruling and the trial court's judgment in favor of Citizens Bank.

*Judgment reversed. Phipps, P. J., and Peterson, J., concur.*

---

[9] *See id.*