**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2017**

# In the Court of Appeals of Georgia

A17A0434. WALLIN et al. v. WALLIN.

DILLARD, Presiding Judge.

In 2009, Cassie Wallin filed a lawsuit against her then father-in-law, Eugene ("Gene") Wallin, and her soon-to-be-former husband, Jeremy Wallin, asserting claims for breach of an oral agreement and *quantum meruit* based on Gene's refusal to deed a parcel of property to her. Following trial, a jury awarded $276,000 to Cassie on her *quantum meruit* claim, and shortly thereafter, the trial court entered judgment, affirming that award.[1] But that same day, Gene Wallin transferred the subject property, via a security deed, to his brother's former wife, Linda Wallin. Subsequently, Cassie filed suit against Gene, Linda, and Jeremy, claiming that the

---

[1] In 2012, this Court affirmed the judgment against Gene Wallin but reversed it as to Jeremy Wallin. *See Wallin v. Wallin*, 316 Ga. App. 455 (729 SE2d 567) (2012).

transfer of the property was fraudulent and, thus, should be set aside. And following a bench trial, the court agreed and voided the transfer. Gene, Linda, and Jeremy (collectively "appellants") now appeal, arguing that the court erred in ruling the transfer was fraudulent under OCGA § 18-2-70 *et seq.* and in entering judgment against Jeremy when he was not a party to the allegedly fraudulent security deed. For the reasons set forth *infra*, we reverse the trial court's judgment voiding the transfer.

We first note that on appellate review of a bench trial, "the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[2] Importantly, in a bench trial, the judge sits as trier of fact, and "the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them."[3] But this Court reviews any questions of law decided by the trial court *de novo*.[4]

---

[2] *Davison v. Citizens Bank & Trust Co.*, 338 Ga. App. 671, 672 (791 SE2d 437) (2016) (punctuation omitted).

[3] *Id.* (punctuation omitted).

[4] *Id.*; *accord Washington v. Harrison*, 299 Ga. App. 335, 336 (682 SE2d 679) (2009).

So viewed, the record shows that in 1990, Gene's brother, Jack Wallin, and Jack's wife, Linda, purchased the subject property, which is located at 317 Deer Head Cove Road in Rising Fawn, Georgia, by obtaining a mortgage for $127,000 and executing a security deed in favor of the lender, Citizens Bank & Trust. On May 12, 1994, Jack and Linda conveyed the property to Gene, via a warranty deed, but the parties executed no promissory note at that time, and instead, Gene made mortgage payments directly to Citizens Bank & Trust. Moreover, Jack and Linda retained possession of the property and, in fact, operated a business on it for several years.

In 2002, Jack and Linda divorced, and on January 29 of that year, allegedly as a means for Jack to satisfy part of the couples' divorce settlement, Gene executed a promissory note in favor of Linda for $150,000. The promissory note, however, mentioned no collateral. At the same time, Gene executed a security deed in favor of Linda, pledging the property as collateral for the $150,000 promissory note, but this deed was never recorded.

Thereafter, Cassie and her then-husband, Jeremy, Gene's son, rented the property from Gene but paid rent directly to Linda. During that time, Cassie and Jeremy made significant improvements to the property and operated two businesses on it for several years. In addition, Cassie and Jeremy paid the mortgages, insurance,

3

and taxes on the property, allegedly under an oral agreement with Gene that, if they did so, he would deed the property to them. But in 2009, when Gene purportedly breached that agreement, Cassie filed suit against him and her soon-to-be-former husband, Jeremy, seeking damages on claims of breach of contract and *quantum meruit*.[5]

As previously noted, on April 8, 2011, following trial, a jury awarded Cassie $276,000 on her *quantum meruit* claim, and on May 12, 2011, the trial court affirmed the jury's verdict and entered a judgment in favor of Cassie.[6] On that very same day, and with the assistance of the same counsel who represented him at trial, Gene executed a second security deed in favor of Linda, again pledging the subject property as collateral for the 2002 promissory note. Eight days later, unlike the 2002 deed, that deed was recorded.

On May 25, 2011, five days after the second deed from Gene to Linda was recorded, Cassie obtained a writ of fieri facias in the amount of $276,000 against

---

[5] *Quantum meruit* is an equitable doctrine "based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby." *Hamler v. Wood*, 337 Ga. App. 319, 323 (2) (787 SE2d 299) (2016) (punctuation and citation omitted).

[6] *See supra* note 1.

Gene and Jeremy.[7] But shortly after doing so, Cassie learned of the May 12, 2011 security deed that Gene had executed in favor of Linda. And on November 23, 2011, following unsuccessful efforts to collect on the judgment, Cassie filed suit against Gene, Linda, and Jeremy, alleging that the subject property was fraudulently conveyed and, thus, seeking to have the second deed voided.

After discovery, the case proceeded to a bench trial, during which all of the parties testified. Specifically, during Gene's testimony, he conceded that he executed the second security deed so that Linda would have priority over Cassie to satisfy the debt he owed Linda under the 2002 promissory note. But Gene's new counsel argued, *inter alia*, that even the unrecorded 2002 security deed gave Linda priority over Cassie's judgment. Nevertheless, at the conclusion of the bench trial, the court entered an order finding that the conveyance was fraudulent because it was executed "to defeat and hinder" Cassie's ability to collect on her judgment and voiding it on such grounds. Subsequently, Gene, Jeremy, and Linda filed a motion for reconsideration, which the trial court denied. This appeal follows.

---

[7] As previously noted, this Court reversed the judgment against Jeremy in a separate appeal. *See supra* note 1.

5

1. The appellants contend that the trial court erred in ruling that Gene's May 12, 2011 conveyance of the subject property to Linda, via a security deed, was fraudulent under the Uniform Fraudulent Transfers Act ("UFTA"), OCGA § 18-2-70 *et seq.*[8] We agree.

Under the UFTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]"[9] And OCGA § 18-2-74 (b) lists several factors, colloquially known as "badges of fraud,"[10] that "consideration may be given [to], among other factors," in

---

[8] Effective July 1, 2015, the Act was renamed the "Uniform Voidable Transactions Act." Ga. L. 2015, p. 996 (Act 167), § 4A-1.

[9] OCGA § 18-2-74 (a) (1).

[10] *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (114 SCt. 1757, 128 LE2d 556) (1994) (Scalia, J.) ("The modern law of fraudulent transfers had its origin in the Statute of 13 Elizabeth, which invalidated 'covinous and fraudulent' transfers designed 'to delay, hinder or defraud creditors and others.' . . . English courts soon developed the doctrine of 'badges of fraud': proof by a creditor of certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration) would raise a rebuttable presumption of actual fraudulent intent.") (citation omitted); *Sun Nurseries, Inc. v. Lake Erma, LLC*, 316 Ga. App. 832, 839 (1) (b) (730 SE2d 556) (2012) (referring to the eleven nonexclusive factors delineated in OCGA § 18-2-74

determining whether a fraudulent transfer has been made with actual intent to defraud a creditor:

(1) [t]he transfer or obligation was to an insider; (2) [t]he debtor retained possession or control of the property transferred after the transfer; (3) [t]he transfer or obligation was disclosed or concealed; (4) [b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) [t]he transfer was of substantially all the debtor's assets; (6) [t]he debtor absconded; (7) [t]he debtor removed or concealed assets; (8) [t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) [t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) [t]he transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) [t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[11]

---

(b) as "badges of fraud.").

[11] OCGA § 18-2-74 (b); *see also SRB Inv. Servs., LLLP v. Branch Banking & Trust Co.*, 289 Ga. 1, 4 (2), 709 SE2d 267 (2011) (applying the badges of fraud as delineated in OCGA § 18-2-74 (b)).

Thus, a creditor who can show a fraudulent conveyance has "numerous remedies under the Act including but not limited to avoidance of the transfer and attachment of the asset transferred."[12]

In this matter, Cassie argued, and the trial court agreed, that Gene conveyed the subject property to Linda shortly after a jury awarded Cassie a $276,000 judgment against Gene for the sole purpose of hindering Cassie's ability to satisfy that judgment. And indeed, based on Gene's own testimony, the trial court found that "[d]efendants acknowledged at trial that the second deed to secure debt was drafted to defeat the ability of the plaintiff to collect the judgment of $276,000.00."

Nevertheless, it is well established under Georgia law that "satisfaction of a judgment authorizes a levy only upon property which the judgment debtor owns."[13] Thus, in light of the 2002 unrecorded security deed pledging the subject property as collateral for the debt Gene owed to Linda, Gene's ownership interest in the property

---

[12] *Bloom v. Camp*, 336 Ga. App. 891, 894 (1) (785 SE2d 573) (2016) (punctuation omitted).

[13] *Wells Fargo Bank, N.A. v. Twenty Six Props., LLC*, 325 Ga. App. 662, 664 (1) (754 SE2d 630) (2014); *see* OCGA § 9-13-3 ("Every execution shall follow the judgment upon which it issued[.]"); OCGA § 9-13-10 ("Except as otherwise provided by law, executions . . . may be levied on all the estate of the defendant, both real and personal, which is subject to levy and sale.").

was not such that it could be characterized as an "asset" subject to the UFTA. Specifically, under OCGA § 18-2-71 (2) (A), "'[a]sset' means property of a debtor, but the term does not include . . . [p]roperty to the extent it is encumbered by a valid lien[.]" And here, although the 2002 security deed was not recorded, it is nevertheless a valid lien on the property as far as Cassie's judgement is concerned. This is because while an unrecorded deed does not have priority over a subsequent deed to a bona fide purchaser for value without notice,[14] under Georgia law, the holder of a prior unrecorded security deed has priority over a subsequent judgment lien creditor.[15] Indeed, more than one hundred years ago, our Supreme Court held that

[14] *See Caldwell v. Nw. Atlanta Bank*, 194 Ga. 370, 373-74 (1) (21 SE2d 619) (1942) (noting that an unrecorded deed of bargain and sale is postponed only to later bona fide purchasers for value without notice); OCGA § 44-14-63 (a) ("Deeds to secure debt or bills of sale to secure debt not recorded shall remain valid against the persons executing them.").

[15] *See In the Matter of Clifford*, 566 F2d 1023, 1025-27 (5th Cir. 1978) (discussing, at length, the legal history in Georgia pertaining to the priority of unrecorded deeds versus subsequent judgment liens and concluding that, since the 1931 amendment of the applicable statutes, Ga. Laws 1931, p. 153 (now OCGA §§ 44-2-1; 44-2-2; and 44-14-63), "Georgia law grants priority to an unrecorded security deed over a subsequent judgment lien"); *Mackler v. Lahman*, 196 Ga. 535, 537 (27 SE2d 35) (1943) (noting that under the Code of 1933, §§ 67-109, 67-1305, the "effect of a failure to record a mortgage or bill of sale or deed to secure debt 'shall be the same as is the effect of failure to record a deed of bargain and sale,' so changes the previous law with reference to those securities as to render such instruments, even though unrecorded, superior in rank to subsequent liens created by law").

9

[t]he sale of land, although the deed may not have been recorded, as between the parties to the contract, and indeed as to all the world, is a parting of the right of title and ownership from the grantor to the grantee; and to hold that an after acquired judgment against the grantor shall become a lien upon the property conveyed, would be to add to judgments a quality never possessed heretofore, and to take from a deed a condition heretofore always recognized.[16]

Given these particular circumstances, despite not being recorded, the 2002 security deed executed in favor of Linda, pledging the property as collateral for the $150,000 promissory note, gave Linda, as one of Gene's creditors, priority over Cassie's judgment, such that the property could not be characterized as Gene's "asset" under the UFTA.[17] Consequently, while perhaps executed with nefarious intent, the 2011

---

[16] *Donovan v. Simmons*, 96 Ga. 340, 346 (22 SE 966) (1895); *accord Caldwell*, 194 Ga. at 374-75; *Twenty Six Props.*, 325 Ga. App. at 665 (2) n.7; *In the Matter of Clifford*, 566 F2d at 1027.

[17] *See* OCGA § 18-2-71 (2) (A), ("'[a]sset means property of a debtor, but the term does not include . . . [p]roperty to the extent it is encumbered by a valid lien[.]"); *Safari v. RES-MS Bayfront, LLC*, 333 Ga. App. 164, 165 (775 SE2d 637) (2015) (noting same). We note that under Georgia law, after executing the security deed for the property in favor of Linda, Gene retains an equitable title and the right to regain or redeem legal title by payment of the secured indebtedness. *See West Lumber Co. v. Schnuck*, 204 Ga. 827, 835 (1) (51 SE2d 644) (1949) ("A deed to land to secure a debt is an absolute conveyance until the debt is paid and passes the title to the land to the grantee therein"); *see also* OCGA § 44-14-60. But an equitable interest is "not subject to ordinary levy and sale," and in order to "collect on a judgment against a

10

security deed that Gene conveyed to Linda shortly after judgment was entered in favor of Cassie was essentially superfluous with respect to establishing Linda and Cassie's respective priority as Gene's creditors.[18] Accordingly, we reverse the trial court's judgment voiding the transfer of the property as fraudulent under the UFTA.[19]

2. Given our holding in Division 1, we need not address the appellants' remaining enumerations of error.

*Judgment reversed. Ray and Self, JJ., concur.*

_____

person with only an equitable interest in property, a creditor must satisfy any outstanding debt on the property prior to a levy and sale." *Dime Sav. Bank of NY., FSB v. Sandy Springs Assocs., Inc.*, 261 Ga. 485, 487 (3) (405 SE2d 491) (1991) (citation omitted); *see* OCGA § 9-13-60.

[18] *See In the Matter of Clifford*, 566 F2d at 1027 (holding that because Georgia law grants priority to an unrecorded security deed over a subsequent judgment lien, creditor's security deed, which was obtained earlier from now-bankrupt debtor but was not recorded properly, had priority over bankruptcy trustee, who was deemed to have the rights of a hypothetical judgment lien creditor). *Cf. Twenty Six Props.*, 325 Ga. App. at 664-65 (1) (holding that because the record did not establish that debtor had any ownership interest in the property upon which judgment creditor's right to seize his assets could attach, the trial court erred in finding as a matter of law that judgment creditor holds a judgment lien against the property).

[19] We caution that our holding is limited to a finding that the trial court erred in ruling that the 2011 conveyance was fraudulent, and nothing in our holding should be construed as opining on the means by which Cassie may satisfy her judgment against Gene.